UNITED STATES of America
v.
Charles CARABASI.
Crim. No. 20249.

United States District Court
E. D. Pennsylvania.
May 31, 1960.

548

Joseph L. McGlynn, Jr., Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Jacob Kossman, G. Fred DiBona, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

This case comes before the court on (A) oral motion for judgment of acquittal by defendant made at the conclusion of the evidence (N.T. 212–3), concerning which the trial judge reserved decision (N.T. 213), and (B) written Renewal of Motion for Judgment of Acquittal and For New Trial (Document No. 7). The trial to the court, after waiver of jury trial, was conducted on March 9 and 10, 1960, the finding of guilty was made March 25, 1960, and the argument on the above motions was heard on May 3, 1960.

The Information charges a violation of 7 U.S.C.A. § 1622(h), which provides, inter alia:

"The Secretary of Agriculture is directed and authorized:

\*   \*   \*   \*   \*   \*

"(h) To inspect, certify, and identify the class, quality, quantity, and condition of agricultural products when shipped or received in interstate commerce, under such rules and regulations as the Secretary of Agriculture may prescribe, \* \* \* to the end that agricultural products may be marketed to the best advantage, that trading may be facilitated, and that consumers may be able to obtain the quality product which they desire, \* \* \*. Whoever knowingly shall falsely make \* \* \* alter \* \* \* or counterfeit any official \* \* \* mark, or other identification, or device for making such mark or identification, with respect to inspection \* \* \* grade \* \* \* or condition, issued or authorized under this section \* \* \* shall be fined not more than $1,000 or imprisoned not more than one year or both."

The Information alleges that defendant "did knowingly and unlawfully falsely make a mark with respect to the grade of certain meat food products of the Colonial Beef Company \* \* \* to wit:

"1. On four beef ribs, the defendant did place a U. S. Department of Agriculture mark identifying those beef ribs as 'U.S.D.A. Prime' grade, whereas, the true grade of those beef ribs was 'U.S.D.A. Choice'."

The Information continues in three additional paragraphs to charge that 26 other pieces of beef were improperly marked as having a grade superior to the true grade.

On an afternoon in March 1959, an employee (meat grader) of the Meat Grading Branch of the Department of Agriculture was examining some meat at the Colonial Beef Company in Philadelphia, pursuant to assignment by his superiors, when he noticed marks made by circular roller stamps used by the Department of Agriculture employees on some beef ribs, which marks had a blank in the space normally carrying the two letters of the alphabet designating the particular meat grader who has placed the circu-

lar roller stamp on the meat. These official Department of Agriculture circular rollers contain 13 bands with these marks on the bands (G–1 to G–3):[1]

| G-1 | G-2 | G-3 |
| --- | --- | --- |
| USDA PRIME | USDA CHOICE | USDA GOOD |
| USDA PRIME | USDA CHOICE | USDA GOOD |
| USDA PRIME | USDA CHOICE [2] | USDA GOOD |
| USDA PRIME | USDA CHOICE | USDA GOOD |
| USDA PRIME | USDA CHOICE | USDA GOOD |
| U R (or 2 similar identification letters) | U R (or 2 similar identification letters) | U R (or 2 similar ·identification letters) |
| USDA PRIME | USDA CHOICE | USDA GOOD |
| USDA PRIME | USDA CHOICE | USDA GOOD |
| USDA PRIME | USDA CHOICE | USDA GOOD |
| USDA PRIME | USDA CHOICE | USDA GOOD |
| USDA PRIME | USDA CHOICE | USDA GOOD |
| USDA PRIME | USDA CHOICE | USDA GOOD |
| U R (or 2 similar identification letters) | U R (or 2 similar identification letters) | U R (or 2 similar identification letters) |

The first of the five consecutive bands containing the USDA and the grade follows immediately after the second band with the identification letters in it, as placed in the above list of bands. The bands can be slipped on and off the rollers. In this case, both sets of identification letter bands had been removed from the roller, as blanks appeared in the place where the two identification letters usually appear.

This employee (William S. Averitt) notified his supervisor of these defective marks and the supervisor, accompanied by two other officials of the Department of Agriculture, immediately came to the plant. These officials found that 30 pieces of beef had been similarly marked with a roller which did not contain the two bands having the two identification letters of the grader. Also, these pieces of beef were overgraded. (Most of the

1. There are these additional five grades, as well as those appearing on the rollers offered in evidence: Standard, Commercial, Utility, Cutter and Canner (N. T. 50).

2. The right side of the "O" is bent toward the center of the letter. See G–2.

meat had the roller grade of "Choice," whereas it should have been classified as "Good" or "Commercial." Four ribs were graded "Prime," whereas they should have been graded "Choice".) See G–5 and N. T. 206.

The three officials noticed, after examining the roller branding, "that on the five shield groupings the word Choice of the letter 'O' (sic) in the middle shield of the grouping was apparently damaged, for it did not imprint properly. This was evident on all the improperly branded pieces of meat involved. This damaged letter 'O' in the word Choice was compared with a few cuts of Choice graded lambs (the lambs were properly roller branded and included the grader's Identification 'UR') and found to be identical to the improperly branded cuts of beef. Grader's identification 'UR' is assigned to Mr. Charles Carabasi. With this information, we proceeded to the Philadelphia Dressed Beef Company where he was handling this assignment to check further on the irregularity of the letter 'O' in the word Choice of Mr. Carabasi's roller. We found the irregularity to be identical on the roller branded Choice beef carcasses." (G–5 and N. T. 206).

G–5 also states that the above-described, improperly roller branded, 30 pieces of beef came from establishments located in states other than Pennsylvania. See paragraph 1 of Rulings on Requests for Special Findings of Fact (Document No. 6).

The evidence recited above is sufficient to support the finding of guilty on either of these two grounds:

> A. There was a falsely made, altered or counterfeited official mark by the defendant, since he used a roller from which the identification letter band had been removed.

> B. There was a falsely made official mark by the defendant since he used a roller containing a grade higher than the grade to which each piece of beef was entitled.

The above discussion makes the trial judge's rulings on the following evidentiary points moot,[3] but they are briefly discussed here in the event of an appeal:

■ 1. Any objections to Section 1 and the first three paragraphs of Section 2[4] of D–5 were waived by its offer in evidence by defendant (N. T. 205).

At the argument held May 3, 1960, on these motions, counsel for defendant contended that this statement of defendant should not be considered by the trial judge but the record discloses no limitation on the offer of the document in evidence. The Motion to Strike the statement to the F. B. I. agents (G–6) and related material could hardly include this exhibit, which was offered after the Motion was made.

■ 2. The Motion to Strike G–6 and all evidence pertaining to or resulting from the conversations which the representatives of the Department of Agriculture had with the defendant on the morning after the false marks on the beef were discovered is denied.

This Motion was made several times during the trial (e. g., N. T. 176 & 195) and repeated at the conclusion of the evidence (N. T. 198), and ruling on it was reserved. The evidence discloses that the statements were freely given by the defendant, with the understanding that he would be permitted to resign and he was allowed to do this. I adhere to my finding (paragraph 5 of Document No. 6) that Mr. Maxeiner said that, in his "experience," (N. T. 163) defendant's resignation would be the end of the matter.[5] See United States v. Bayer, 1947,

---

3. The trial judge rules that Exhibit D–4A contains information which is irrelevant and immaterial (see N. T. 205).

4. It may be true that any offer of the fourth paragraph of Section 2 in evidence was inadvertent since it may contain material which tends to incriminate

the defendant and, hence, this paragraph is not included in this discussion.

5. Defendant relies on the use of the word "opinion" at N. T. 167 (see attached letter of 4/25/60), but this word was used by counsel in his question whereas the word "experience" was used by the witness (N. T. 163).

331 U.S. 532, 540, 67 S.Ct. 1394, 91 L.Ed. 1654; cf. United States v. Wheeler, 3 Cir., 1960, 275 F.2d 94, 96–97.

Counsel for defendant contends that Public Law 272 (Ch. 632) passed by the 84th Congress (1st Sess.) in August 1955, is inapplicable to the above recited facts because of its legislative history.[6] The language from the statute quoted above makes resort to the legislative history unnecessary. Also, the following language from the Congressional Committee Reports confirms the intent of Congress to apply the Act to a situation such as this:

"The penalty provision which would be added to the Agricultural Marketing Act of 1946 by S. 1757 is more inclusive and stricter than the penalty provision of the Perishable Agricultural Commodities Act in the following respects:

"(1) It covers violations of such regulations as may be issued to govern the use of inspection certificates, memoranda, marks and devices. * * * One matter that it is intended to cover is the use of the letters 'U.S.D.A.' and grade designations on meat.

"(2) It is applicable to memoranda, marks, identifications and devices, as well as inspection certificates. Thus forgery of grade stamps would be covered." (Page 2 of Senate Report 562 accompanying S. 1757).

At page 3, the above Senate Report states that the bill covers "wrongdoing in connection with inspection, *grading* and certification services" (emphasis supplied).

"It is applicable to memorandums, marks, identifications, e. g., United States standards, and devices, such as meat-grading stamps, as well as inspection certificates. It covers the possession and *use,* as well as publication or utterance of false material or devices. It omits the requirement * * * that the act be done 'for a fraudulent purpose.' " (Emphasis supplied.) (Page 2 of House Report 1463 accompanying S. 1757—Vol. II, U.S.Code Cong. & Admin.News, 1955, p. 2728.)

See, also, the following quotation from letter of Acting Secretary of Agriculture attached to each of the above Congressional Committee Reports:

"The amendment provides additional safeguards against forgery or alteration of inspection certificates, unauthorized use of official grade marks or designations, and false or deceptive reference to United States grade standards or services * * * " It is proposed that the statute be further amended to prohibit the unauthorized use of official grade marks or designations and the making of false or deceptive references to United States grade standards or inspection services * * *. False, deceptive or unauthorized marks or claims concerning the United States grades or the Government inspection relating thereto are detrimental to the best interest of the producer, distributors and consumers. * * *" U.S.Code, Cong. & Admin. News, Vol. II, 84th Cong., 1st Sess.1955, page 2729.

The following testimony given in connection with an amendment to the Bill, as originally introduced in the Senate, is also pertinent:[7]

"Mr. Girard: * * * Now of course in that connection I think we should point out that to determine whether something is an official memorandum, certificate, mark, or device it will need a regulation of the Department as to describe what would constitute such

---

6. The defendant's able Trial Memorandum and Post Trial Brief, as well as the Government's helpful brief, are being attached to this opinion.

7. Excerpts from this testimony, including the quotation below, are contained in a Memorandum furnished by defendant's counsel which has been placed in the Clerk's file.

an official memorandum and so on. To that extent the regulations would have some effect upon your prosecution, but the prosecutions would not be for violation of the regulation but rather a violation of this provision of the act.

\*    \*    \*    \*    \*    \*

"Now you will note in the substitute we are merely proposing to make it a crime for any representation that an agricultural product has been officially graded or inspected when in fact it has not been. Of course when a person utters a false or forged certificate, mark, or device, he is guilty of misrepresentation but that type of misrepresentation would be covered with specific language applicable to that type of act."

For the foregoing reasons, the Motions will be denied.