**UNITED STATES of America**

v.

**Charles CARABASI, Appellant.**

**No. 13310.**

United States Court of Appeals Third Circuit.

Argued Jan. 24, 1961.

Decided June 9, 1961.

Leon H. Kline, Philadelphia, Pa. (G. Fred DiBona, Jacob Kossman, Philadelphia, Pa., on the brief), for appellant.

Daniel J. DiGiacomo, Asst. U. S. Atty., Philadelphia, Pa., (Walter E. Alessandroni, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and KALODNER, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The defendant-appellant was charged in an information with violating Title 7 U.S.C.A. § 1622(h) (1955), in that he, " * * * did knowingly and unlawfully falsely make a mark with respect to the grade of certain meat food products of the Colonial Beef Company, 409 N. Franklin Street, Philadelphia, Pennsylvania, to wit: 1. On four beef ribs, the defendant did place a U.S. Department of Agriculture mark identifying those beef ribs as 'U.S.D.A. Prime' grade, whereas, the true grade of those beef ribs was 'U.S.D.A. Choice'." Similar violations as to twenty-six other pieces of beef were also alleged.

The case was tried to the court and the evidence revealed that during the critical period Carabasi was working as a meat grader for the Department of Agriculture. He had been so employed since 1951. In March 1959, he was grading meat at the plant of Colonial Beef Company, Philadelphia, Pennsylvania. During that time at the request of a buyer for Colonial Beef Company, he marked four pieces of beef "U.S.D.A. Prime" instead of "U.S.D.A. Choice" their true grade. It was also proven that the twenty-six other pieces of meat were overgraded by Carabasi. All of the said beef came from establishments in states other than Pennsylvania. In addition it was established that the roller used by Carabasi to stamp the grade on the beef did not contain his identification letters as grader.[1]

---

1. This offense while palpably within Section 1622(h) was not in any way charged in the information. It is not here urged in support of the judgment nor could it be.

The district court after detailing the above evidence found that:

"There was a falsely made official mark by the defendant since he used a roller containing a grade higher than the grade to which each piece of beef was entitled." [185 F.Supp. 550.]

Appellant's first argument is that even though the evidence supports the factual conclusion that he did overgrade the beef, the information should be dismissed since those acts do not constitute the false making of a mark, under the language of the statute. 7 U.S.C.A. § 1622 (h) (1955).

The statute is divisible into three parts. The first clause, which appellant is alleged to have violated provides:

"Whoever knowingly shall falsely make, issue, alter, forge, or counterfeit any official certificate, memorandum, mark, or other identification, or device for making such mark or identification, with respect to inspection, class, grade, quality, size, quantity, or condition, issued or authorized under this section * * * shall be fined not more than $1,000 or imprisoned not more than one year, or both."

The next clause prohibits the possession, uttering, publishing, or using as true any falsely made, issued, altered, forged, or counterfeited mark. The final clause prohibits the false representation that an agricultural product has been officially graded. Appellant was not charged with the violation of either of these latter provisions, but only the first, i. e., that he falsely made a mark.

Although there are no reported cases interpreting this law, its legislative history leaves no doubt that one of its purposes was to proscribe what the appellant did.

In sponsoring the amendment the Secretary of Agriculture stated that it " * * * provides additional safeguards against * * * *unauthorized use of official grade marks or designations*, and false or deceptive references to United States grade standards or services. * * * It is proposed that the statute be further amended to prohibit the *unauthorized use of official grade marks or designations* and the making of false or deceptive references to United States grade standards or inspection services. * * * False, deceptive or *unauthorized marks* or claims concerning the United States grades or the Government inspection relating thereto are detrimental to the best interests of the producer, distributors and consumers." (Emphasis supplied.) U.S.Code, Cong. & Ad.News Vol. II, 84th Cong., 1st Sess.1955 p. 2729.

In the same volume, p. 2728, the House Report further states:

"The penalty provision which would be added to the Agricultural Marketing Act of 1946 by S. 1757 is more inclusive and stricter and affords greater protection to the inspection service than the penalty provision of the Perishable Agricultural Commodities Act. It covers violations of such regulations as may be issued *to govern the use of* inspection certificates, memorandums, *marks, identifications*, and devices. It is applicable to memorandums, *marks, identifications, e. g. United States standards*, and devices *such as meat grading stamps*, as well as inspection certificates." (Emphasis supplied.) U.S.Code, Cong. & Ad.News, Vol. II, 84th Cong., 1st Sess.1955 p. 2728.

This background does not relate solely to the first clause of the section, but is applicable to all of them. Therefore, it does not necessarily follow that the Congressional purpose of further guarding against unwarranted employment of a Department marker was implemented by the language of the first clause which reads: "Whoever knowingly shall falsely make, issue, alter, forge, or counterfeit any official * * * mark * * *." We must examine all the language of the statute to determine which clause was used by Congress to proscribe the unauthorized use of an official marker.

With regard to the first clause, the language is not *sui generis*. It has been used in other comparable statutes. And the decisions under those statutes are a helpful guide. For example, the National Stolen Property Act, 18 U.S.C.A. § 2314 (1956) provides:

"Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities, knowing the same to have been falsely made, forged, altered, or counterfeited; * * *"

Construing that provision the courts have uniformly held that the act of false making partakes of the same elements as forgery. See, *e. g.*, Marteney v. United States, 10 Cir., 1954, 216 F.2d 760, 763; Wright v. United States, 9 Cir., 1949, 172 F.2d 310, 311; Greathouse v. United States, 4 Cir., 1948, 170 F.2d 512, 514. Thus in Marteney the court stated at page 763 of 216 F.2d:

"As used in criminal statutes, the words 'falsely made' and 'forged' are homogeneous, partaking of each other. They have always been synonymously construed to describe a spurious or fictitious making as distinguished from a false or fraudulent statement. The words relate to genuineness of execution and not falsity of content."

To the same effect is the Wright decision where the court said at page 311 of 172 F.2d:

"There is no definition of either of the terms, 'falsely made' or 'forged,' in the National Stolen Property Act. They are to be found in many other Federal, forgery statutes where, likewise, they are not specifically defined. It seems a reasonable assumption that Congress intended them to have their common, ordinary meaning in all such statutes including the one now under consideration. The word 'forgery' is commonly defined as the false making or materially altering, with intent to de-fraud, of any writing, which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability."

The reasoning of these cases is persuasive in interpreting the first clause of the involved statute. And since we find no indication in its legislative history which in any way indicates a contrary Congressional intention, we are convinced that this language was intended to be given its natural and ordinary meaning. Accordingly, we hold that this clause of the statute was intended to proscribe conduct tantamount to forgery.

Appellant did not use a forged marker. What he did was to use a genuine marker to misgrade the meat. He took a Department "Prime" roller and with it made the mark "Prime" on beef of a lower grade, namely, "Choice." Although this act fraudulently misrepresented the grade of the meat, and was a misuse of the official marker, it did not constitute the offense of falsely making a mark under the statute.

There remains to be determined, what language in the section Congress intended to prohibit the misuse of an official marker. We think the conclusion is plain that such conduct was to be prohibited by the last clause of the section which provides:

"* * * whoever knowingly represents that an agricultural product has been officially inspected or graded (by an authorized inspector or grader) under the authority of this section when such commodity has in fact not been so graded or inspected shall be fined not more than $1,000 or imprisoned not more than one year, or both."

It aptly describes what appellant did. He represented that the meat had been officially graded "U.S.D.A. Prime," when in fact it had not.

However, since the defendant is not charged with violating this clause of the section in the information, but only with "* * * falsely making a mark * * *"

under the first clause, the information must be dismissed.

The judgment of the district court will be reversed and the cause remanded with direction to dismiss the information.