GILBERT v. UNITED STATES.

No. 478.   Argued April 10, 1962.—Decided June 25, 1962.

*Fred Okrand* and *Albert A. Dorn* argued the cause and filed briefs for petitioner.

*Kirby W. Patterson* argued the cause for the United States. With him on the briefs were *Solicitor General Cox, Assistant Attorney General Miller, J. William Doolittle* and *Beatrice Rosenberg.*

MR. JUSTICE HARLAN delivered the opinion of the Court.

Petitioner, an accountant whose business included acting for others in federal income tax matters, was charged in a thirty-five-count indictment with violations of 26 U. S. C. § 7206 (2), 18 U. S. C. § 1001, and 18 U. S. C. § 495, in that he had allegedly falsified his clients' returns (§ 7206 (2)), forged their endorsements on government tax-refund checks (§ 495), and, by endorsing such checks, had made false statements as to a matter within the jurisdiction of a government agency (§ 1001). The jury convicted on thirty-one counts and acquitted on four others.

On appeal, 291 F. 2d 586, 597, the judgment of conviction was set aside as to twenty-nine counts, and a new trial ordered, because the Court of Appeals found that evidence used by the Government in support of these counts had been illegally seized. The judgment as to the remaining two counts (Nos. 21 and 22), charging the petitioner with having forged the endorsements of Daniel H. Bartfield and Charline R. Bartfield on two government refund checks (18 U. S. C. § 495), was affirmed.[1]

It was stipulated at the trial that petitioner had endorsed in his own handwriting the two checks, made out to:

"Daniel H & Charlene R Bartfield
c/o R Milo Gilbert
519 Taft Building
Hollywood 28 Calif"

in the following manner:

"Daniel H. Bartfield
Charline R. Bartfield
R. Milo Gilbert, Trustee"[2]

---

[1] 18 U. S. C. § 495 provides: "Whoever falsely makes, alters, forges, or counterfeits any deed, power of attorney, order, certificate, receipt, contract, or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States or any officers or agents thereof, any sum of money . . . .

.       .       .       .       .

"Shall be fined not more than $1,000 or imprisoned not more than ten years, or both."

Counts 21 and 22, which are identical in form, charge:

"On or about June 2, 1958, . . . the defendant R. Milo Gilbert knowingly and wilfully forged on United States Treasury Check . . . the endorsement and signature of the payees, Daniel H. and Chalrene R. Bartfield, for the purpose of obtaining and receiving said amount from the United States, its officers and agents."

[2] As payee of the two checks, Mrs. Bartfield's first name (Charline) was incorrectly spelled "Chalrene" on one and "Charlene" on the

Petitioner claimed that a written power of attorney, allegedly signed by both Bartfields in his office, authorized him to endorse tax-refund checks, and that "Trustee" after his name served to designate the particular bank account where he deposited and held all client-refunds until December of each year, against the possibility of there being a refund adjustment and until his contingent fee was settled. The Bartfields acknowledged that the signatures on the power of attorney were theirs, but disclaimed recollection of signing the instrument, and denied that they ever authorized petitioner orally or in writing to receive or endorse checks.[3]

On these premises the Court of Appeals, concluding that the evidence was sufficient to permit the jury to find that petitioner had endorsed the checks without authority (a conclusion which for present purposes we accept), held that one who endorses a government check by signing the name of the payee and then his own, as agent, when in fact he has no such authority, is guilty of forgery under § 495. We granted certiorari to consider the correctness of that view of the statute. 368 U. S. 816. While not mentioned in the petition for certiorari, though discussed in the briefs on the merits, the Court of Appeals for the Tenth Circuit, after the Court of Appeals' decision in the present case, held that "forgery" under § 495 does not embrace a purported, but misrepresented, agency endorsement (hereafter called simply an "agency endorsement"). *Selvidge* v. *United States,* 290 F. 2d 894. For reasons given in this opinion we agree with the Tenth Circuit.

other, the former misspelling being carried over into the indictments. (Note 1, *supra.*) On one of the checks, petitioner's first name, as part of the payee inscription, was incorrectly spelled "Mile."

[3] No claim is made in this case that there was anything wrong with the Bartfields' income tax returns, to which the two refund checks related.

## I.

At the outset we are met with the Government's suggestion that the statutory construction question need not be faced in this case. Before the Court of Appeals, as in the petition for certiorari, it was assumed by all that the two checks (which after the trial and before the case reached this Court had for some reason become mislaid) had been endorsed *"by* R. Milo Gilbert, Trustee." (Emphasis added.) That was a mistaken assumption for, as the checks themselves show (*supra,* p. 651), there was no "by" before "R. Milo Gilbert, Trustee."

Arguing that the jury might have found that the word "Trustee" after Gilbert's signature did not purport to indicate an agency endorsement, but was merely intended as a designation for routing the checks for deposit in one of Gilbert's "client" bank accounts, the Government suggests that a plain case of forgery is made out, and the agency-endorsement question is not in truth presented by the record.

We cannot so easily dispose of the case. For accepting the premise that the jury could have found that petitioner did not purport to act in a representative capacity when he endorsed the checks, it was surely also permissible for the jury to find that petitioner had purported to make an agency endorsement in both instances, and we are thus left to speculate on which theory its verdict in fact rested. Indeed the record before us seems to indicate that this aspect of the case was tried, at least primarily, on an agency-endorsement theory. The trial judge's instructions to the jury on this phase of the case were at best opaque. Having refused to instruct the jury that an agency endorsement was not forgery under § 495,[4] he at

---

[4] Petitioner's requested instructions pertinent to these two counts, both rejected, were:

1. *"One who* executes an instrument purporting on its face to be executed by him as agent of a principal named therein, when in fact

no point undertook to explain the difference between an agency and a nonagency endorsement.[5]  Nor can we perceive any force in the Government's further suggestion. that the jury's verdict on these two counts might have rested simply on the theory that in describing himself as "Trustee" the petitioner had made a fictitious endorsement, in that he had never occupied that status.  Since the charge was that petitioner had forged the names of the Bartfields, not of their agent, this is but another way of describing the agency-endorsement version of the transaction.

In this posture of things the Government's proposal that we bypass decision of the question that brought the case here must be rejected.  If an agency endorsement

---

he has no authority for such principal to execute said instrument, is not guilty of forgery.

"*People* v. *Bendit*, 111 C 274 (1896) ; *International Finance Corporation* vs. *People's Bank of Keyser*, 27 F 2d 523 at 527.  4 I ALR 231 n."

2. "A check endorsed as follows—name of payee by other as trustee, does not constitute a forged instrument under U. S. C. Title 18, Section 495."

[5] Other than a dictionary definition of the word "trustee," the only instructions given the jury by the trial judge on this phase of the case were these:

"Where a tax accountant represents a taxpayer in the preparation of tax returns, there is no presumption of authority and the rights of the tax accountant must be governed by the terms of his employment, as applies to any other ordinary agency.

"Also, a power of attorney to prosecute a claim against the Government giving authority to receive a check in payment gives the agent no power to indorse and collect the check.  But such authority may be given either orally or by writing."

No instructions specifically addressed to the elements of the offense under 18 U. S. C. § 1001 were given, and the Government does not here seek to support the conviction on the two forgery counts on the basis of that section.

does not constitute forgery under § 495, the petitioner is at least entitled to a new trial under proper jury instructions.

## II.

The original predecessor of § 495 was enacted in 1823, 3 Stat. 771, and in respects here pertinent has throughout the intervening years been in substantially the same form as § 495. There is no significant legislative history illuminating § 495 or any of its predecessors. In deciding whether "forges" under § 495 embraces agency endorsements, it is therefore important to inquire, as the Government recognizes, into the common-law meaning of forgery at the time the 1823 statute was enacted. For in the absence of anything to the contrary it is fair to assume that Congress used that word in the statute in its common-law sense.

In 1847 it was decided in the English case of *Regina* v. *White,* 2 Car. & K. 404, 175 Eng. Rep. 167 (Nisi Prius, Book 6), that "indorsing a bill of exchange under a false assumption of authority to indorse it per procuration, is not forgery, there being no false making." [6]   2 Car. & K., at 412, 175 Eng. Rep., at 170 (Nisi Prius, Book 6). This to be sure was some twenty-four years after the 1823 predecessor of § 495 came on the books. The Government says that this English decision should be regarded as but an ill-advised and temporary departure from the earlier common law which was "soon recognized" and remedied by the passage of the Forgery Act of 1861, 24 & 25 Vict., c. 98, § 24, defining forgery to include

---

[6] The trial judge, in summation, had instructed the jury "that if they were of opinion that the prisoner, at the time when he signed this indorsement, had wilfully misrepresented that he came from Mr. Tomlinson [the defendant's former employer] with intent to defraud him or the bankers, and had no authority from Mr. Tomlinson, they ought to find him guilty." 2 Car. & K., at 406, 175 Eng. Rep., at 168 (Nisi Prius, Book 6).

unauthorized signings "per procuration," with intent to defraud.[7] The Government draws from earlier English authority, 2 East, Pleas of the Crown, 850–859 (1803); 1 Hawkins, Pleas of the Crown, c. 70; Coke, Third Institute (1797 ed.) 169; 4 Blackstone, Commentaries, 247, the conclusion that agency endorsements did constitute forgery under the common law as it existed when the 1823 American statute was passed.

This view cannot readily be accepted. The fifteen judges who participated in *Regina* v. *White* unanimously decided that case as they did only after considering the earlier English authorities. Such of those authorities as are now relied on by the Government are by no means as clear as the Government would have them. Thus Lord East's comments, *supra,* at p. 852, were: *"Forgery* at common law denotes a *false* making (which includes every alteration of or addition to a true instrument), a making *malo animo,* of any written instrument for the purpose of fraud and deceit. . . . [The ancient and modern authorities] all consider the offence as consisting in the false and fraudulent making or altering of such and such instruments." (Emphasis in original.) Coke,[8] Hawkins,[9] and

---

[7] The statute presently in effect in England, the Forgery Act of 1913, 3 & 4 Geo. 5, c. 27, § 1 (2), provides that a document is forged "if the whole or any material part thereof purports to be made by or on behalf or on account of a person who did not make it nor authorise its making . . . ."

[8] "Lord Coke [Third Institute 169] indeed seems to confine it [forgery] in strictness to an act done *in the name of another,* but this was long ago agreed . . . to be too narrow a definition." 2 East, Pleas of the Crown, 852 (1803). Hawkins interpreted Coke to say that even the alteration of a deed, by adding a 0 to 500 to make it 5000, "may more properly be called a false than a forged Writing, because it is not forged in the Name of another, nor his Seal nor Hand counterfeited." 1 Hawkins, Pleas of the Crown, c. 70, § 2, at 183 (1762).

[9] "Forgery by the Common Law seemeth to be an Offence in falsly and fraudulently making or altering any Matter of Record, or any

Blackstone,[10] who are also cited by the Government, are no more persuasive towards the Government's view. The more inclusive definition of forgery contained in the English statutes, *supra,* p. 655 and note 7, proves not that *Regina* v. *White* was mistaken in its view of the common law but only that a broader definition was deemed desirable by Parliament. And finally, the *Regina* v. *White* view of forgery at common law was early accepted in a federal case as representing the English common law. *In re Extradition of Tully,* 20 F. 812. The same view of forgery has since been followed in most of the state and federal courts in this country. See, *e. g., People* v. *Bendit,* 111 Cal. 274, 276–280, 43 P. 901, 902; *Pasadena Investment Co.* v. *Peerless Casualty Co.,* 132 Cal. App. 2d 328, 331, 282 P. 2d 124, 125; *State* v. *Lamb,* 198 N. C. 423, 425–426, 152 S. E. 154, 155–156; *Dexter Horton Nat. Bank* v. *United States Fidelity & Guaranty Co.,* 149 Wash. 343, 346–351, 270 P. 799, 800–802; *Greathouse* v. *United States,* 170 F. 2d 512, 514; *Marteney* v. *United States,* 216 F. 2d 760, 763–764.

The foregoing considerations combine to lead us to the conclusion that "forge" in § 495 should not be taken to include an agency endorsement. So the Court of Appeals for the Tenth Circuit has held in *Selvidge* v. *United States, supra,* the only case in the lower federal courts

---

other authentick Matter of a publick Nature . . . ." 1 Hawkins, Pleas of the Crown, c. 70, § 1, p. 182 (1762). "Also the Notion of Forgery doth not seem so much to consist in the counterfeiting a Man's Hand and Seal, which may often be done innocently, but in the endeavouring to give an Appearance of Truth to a mere Deceit and Falsity, and . . . to impose that upon the World as the solemn Act of another . . . ." *Id.,* § 2, at 183.

[10] "Forgery, or the *crimen falsi,* . . . may with us be defined (at common law) to be, 'the fraudulent making or alteration of a writing to the prejudice of another man's right' . . . ." 4 Blackstone, Commentaries (Christian ed. 1809), 247–248.

squarely dealing with the point,[11] and we perceive no sound reason for rejecting its conclusion. We find no more persuasive than did the Court of Appeals in *Selvidge* (290 F. 2d, at 896 and note 2) the scattered federal cases relied on by the Government in support of the opposite view.[12] Nor are we impressed with the argument that "forge" in § 495 should be given a broader scope than its common-law meaning because contained in a statute aimed at protecting the Government against fraud.[13] Other federal statutes are ample enough to protect the Government against fraud and false statements. See 18 U. S. C. §§ 1001–1026. Still further, it is significant that cases construing "forge" under other federal statutes have generally drawn a distinction between false or fraudulent statements and spurious or fictitious makings. See, *e. g., Greathouse* v. *United States, supra* (construing 18 U. S. C. § 2314); *Wright* v. *United States,* 172 F. 2d 310, 311–312 (construing 18 U. S. C. § 2314); *Marteney* v. *United States, supra* (construing 18 U. S. C. § 2314); *United States* v. *Carabasi,* 292 F. 2d 362, 364 (construing 7 U. S. C. § 1622 (h)). Where the "falsity lies in the representation of facts, not in the genuineness of execution," it is not forgery. *Marteney* v. *United States, supra,* at 763–764. Of course, Congress could

---

[11] We do not read the early case of *United States* v. *Osgood,* 27 Fed. Cas. No. 15,971a, 362, decided under the 1823 statute, as pointing to a different conclusion.

[12] *Ex parte Hibbs,* 26 F. 421; *Yeager* v. *United States,* 59 App. D. C. 11, 32 F. 2d 402; *United States* v. *Tommasello,* 64 F. Supp. 467; *Quick Service Box Co.* v. *St. Paul Mercury Indemnity Co.,* 95 F. 2d 15.

[13] The fact that the original 1823 statute had a proviso disclaiming any purpose to preempt state criminal jurisdiction in respect of matters covered by the Federal Act does not of course, as the Government suggests, indicate that "forgery" had a wider meaning in federal than under state law. Cf. 18 U. S. C. § 3231, where a similar general proviso relating to all statutes in Title 18 is now found.

broaden the concept of "federal" forgery by statutory definition. We hold only that it has not yet done so.

We conclude that petitioner's conviction cannot be sustained upon this record. However, since we are not prepared at this stage to say that the Government might not be entitled to succeed on these two counts of the indictment upon the theory that petitioner never signed the Bartfields' names in a representative capacity, we think the way should be left open for a retrial of them under proper jury instructions, in conjunction with the other counts already remanded by the Court of Appeals, within a reasonable time. Accordingly, the judgment of the Court of Appeals is vacated and the case is remanded to the District Court for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE BLACK, MR. JUSTICE CLARK, and MR. JUSTICE STEWART dissent, believing that one who endorses a check in the name of the payee without authority to do so is guilty of forgery under 18 U. S. C. § 495, whether or not the forger falsely purports to have signed the payee's name as an authorized agent.

MR. JUSTICE FRANKFURTER and MR. JUSTICE WHITE took no part in the consideration or decision of this case.