**UNITED STATES of America ex rel. Alfred SCHNITZLER, Petitioner,**

v.

**Hon. Harold W. FOLLETTE, Warden of Green Haven State Prison, Stormville, New York, Respondent.**

No. 67 Civ. 724.

United States District Court
S. D. New York.

April 19, 1967.

Jaffe & Feldman, New York City, for petitioner.

Louis J. Lefkowitz, Atty. Gen. of New York, for respondent; Michael H. Rauch, Asst. Atty. Gen., of counsel.

## MEMORANDUM

BONSAL, District Judge.

Petitioner, an inmate of Green Haven Prison, Stormville, New York, seeks a writ of habeas corpus. He contends that a search warrant, the execution of which uncovered approximately 25 pounds of marijuana in his apartment, was issued without probable cause in that there was no showing of the reliability of the informant on the basis of whose information the warrant was issued.

It appears that on January 7, 1964 Detective Gene D'Arpe of the Narcotics Bureau of the New York City Police Department arrested Victor Gonzales on a narcotics charge (R: 55).[1] In the course of interrogation after arrest, Gonzales told D'Arpe that he and petitioner worked in the same band, that he was petitioner's source of supply for narcotics, that he sold narcotics to petitioner from time to time, that he had sold petitioner maybe 50 pounds of marijuana which was still in petitioner's apartment, and that petitioner lived in an apartment hous eat 62–60 Woodhaven Blvd., Queens (R: 55–57).

On January 8, 1964 at approximately 1:00 p.m., D'Arpe appeared before Judge Glowa of the Criminal Court of the City of New York, County of Kings, to obtain a search warrant. In an affidavit in support of the issuance of the warrant, D'Arpe stated that:

I have information based upon a confidential informant that one M/W/ 34 years of age, and named Albert Schnitzler who resides at 62–60 Woodhaven Blvd New York.

Informant tells me that Albert Schnitzler is a male, white, 34 years of age, and is approximately 6', 180 lbs, with light hair and blue eyes and resides at the aforementioned address, and says that he is a seller of Narcotics and Marijuana in large quantities. Informant further stated that he was present when a delivery of marijuana was made to 62–60 Woodhaven Blvd. and believes that it was in excess of 50 lbs.

Informant believes an immediate search of premises 62–60 Woodhaven Blvd, occupied by Albert Schnitzler, should be made since Albert Schnitzler deals narcotics and marijuana in large quantities only, and can dispose of the aforementioned shipment in a short time.

Based upon the foregoing reliable information and upon my personal knowledge there is probable cause to believe that such property namely Narcotics and Marijuana * * * may be found in the possession of Albert Schnitzler or at premises 62–60 Woodhaven Blvd.

D'Arpe told Judge Glowa that another arrest had been made in the case and, in response to Judge Glowa's questions, gave a description of the petitioner, his name and address. (R: 238, 257). Judge Glowa asked if the informant was reliable, and D'Arpe said that he was (R: 258–9). D'Arpe did not tell Judge Glowa that the informant was an accomplice, that the informant had been

---

[1]. All references are to the Record on Appeal to the Appellate Division, Second Department. The testimony having been fully developed in three state court hearings which are incorporated into the Rec-ord and there being no questions of fact drawn adversely to the state, a separate evidentiary hearing by this court is unnecessary. United States ex rel. Mitchell v. Follette, 358 F.2d 922 (2d Cir. 1966).

arrested, or give any reasons for his conclusion that the informant was reliable (R: 250, 258–9).

Judge Glowa signed the search warrant and D'Arpe then proceeded to 62–60 Woodhaven Blvd., Queens with several other New York City police officers. In the meantime, petitioner had been confronted in Manhattan by two agents of the Federal Bureau of Narcotics and told that a search warrant had been issued for the search of his apartment (R: 35). He agreed to go with the federal agents to Queens because his wife was pregnant and he did not want anyone to enter his apartment unless he was there (R: 69). On the way to Queens, petitioner told the federal agents that there were approximately 20 pounds of marijuana in his apartment (R: 69–70).

Petitioner and the two federal agents arrived at 62–60 Woodhaven Blvd. shortly after D'Arpe. While still outside the apartment house, one of the federal officers told D'Arpe that petitioner had admitted that there was marijuana in his apartment, and D'Arpe showed petitioner the search warrant (R: 40, 52). Petitioner then led all the officers to his apartment and, after telling his wife to get dressed, took them into the apartment and pointed out the marijuana (R: 53). D'Arpe questioned petitioner and, after five or ten minutes in the apartment, took him to the 112th Precinct of the New York City Police Department (R: 46–7, 97, 110–111). Petitioner was arraigned the following day (R: 110).

On April 20, 1964 petitioner moved for an order suppressing the use of the marijuana, contending that it was obtained as the result of an illegal search and seizure. A hearing was held on May 11, 1964 before Justice Livoti of the Supreme Court of New York who subsequently denied the motion in a memorandum decision dated June 16, 1964. On October 16, 1964 Justice Conroy of the Supreme Court of New York denied petitioner's second motion to suppress without a hearing.

On October 28, 1964 petitioner was tried before Justice Shapiro of the Supreme Court of New York sitting without a jury. The marijuana was introduced into evidence and petitioner was convicted of the crime of felonious possession of narcotics with intent to sell.

After trial, but prior to sentencing, petitioner filed a petition for a writ of habeas corpus in the Supreme Court of New York. Hearings were held on December 24 and 30, 1964 and on January 4, 1965 before former Chief Judge Conway of the Court of Appeals sitting as a Supreme Court Justice, and on January 4, 1965 Judge Conway denied the petition from the bench on the basis of the prior determinations by Justice Livoti and Justice Conroy. On January 8, 1965 petitioner was sentenced to state prison for a term of five to fifteen years, and on July 7, 1966 the judgment of conviction was affirmed without opinion by the Appellate Division, Second Department. People v. Schnitzler, 26 A.D.2d 773, 272 N.Y.S.2d 745 (1966).

Petitioner appealed to the New York Court of Appeals by permission of Judge Van Voorhis and on December 1, 1966 the Court of Appeals affirmed, three judges dissenting, stating that "the only substantial question" was whether there was probable cause for the issuance of the search warrant. People v. Schnitzler, 18 N.Y.2d 457, 276 N.Y.S.2d 616, 223 N.E.2d 28 (1966). Chief Judge Desmond in an opinion in which Judges Burke, Scileppi, and Bergan concurred, acknowledged that "probable cause cannot be made out by merely stating the belief of an affiant or of an informer that probable cause exists without detailing the underlying circumstances upon which that belief is based." Noting, however, that "courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner", United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct.

741, 13 L.Ed.2d 684 (1965), the majority concluded that:

> The showing in the affidavit that defendant Schnitzler was a seller of marijuana in large quantities and that deliveries thereof had been made to his apartment would warrant a 'cautious man' in believing that the law was being violated in Schnitzler's apartment. The only reasonable objection to this affidavit would come from the absence of a statement as to the informer's reliability, but this information was given by the officer to the Judge before the warrant was issued.

Judge Keating dissented, in an opinion in which Judges Fuld and Van Voorhis concurred, stating that, "While hearsay may undoubtedly be the basis for the issuance of a search warrant, the significant consideration in each case is that there must first exist a 'substantial basis for crediting the hearsay' * * *." Jones v. United States, 362 U.S. 257, 272, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). In Judge Keating's view, the holdings in recent Supreme Court cases require that:

> * * * there must be more than a mere assertion of an informer's reliability, or of independent corroboration, or of the ultimate conclusion of probable cause. There must be a statement of facts and circumstances from which those conclusions can reasonably be drawn and, when the facts and circumstances are based, not on independent knowledge by the affiant, but on an informer's information, there must also be some basis for crediting the informer's tale other than the affiant's bare assertion of reliability.

Judge Keating concluded that, "When the whole of what is stated [in the affidavit in support of the issuance of the warrant and orally by Detective D'Arpe to Judge Glowa] is examined, * * * it appears quite clearly that this warrant was issued on nothing more than the officer's statement that an in-

former believed narcotics were present in Schnitzler's apartment," and that, "the record reveals no basis at all for sustaining a belief, by the affiant or by the Judge, that the informer was reliable."

■ As stated by the majority of the New York Court of Appeals, it is true that "the reviewing court will pay substantial deference to judicial determinations of probable cause". Aguilar v. State of Texas, 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723 (1964). On the other hand, the court must be satisfied that the magistrate was apprised of sufficient facts and circumstances to make a "neutral and detached" judgment. Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). In other words, there must be some basis, apart from the mere conclusory statements of the complaining officer, for a determination that probable cause exists. Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933).[2]

■ It is also true that "hearsay may be the basis for a warrant." Jones v. United States, supra, 362 U.S. at 271, 80 S.Ct. at 736; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). But in such cases, the magistrate must be informed not only of "some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were," but also of "some of the underlying circumstances from which the officer concluded that the informant * * * was 'credible' or his information 'reliable'." Aguilar, supra, 378 U.S. 114, 84 S.Ct. 1514.

■ The reliability of an informant may be substantiated "either from the informer's character and reputation or from the separate, objective checking of

---

2. Of course, "the reviewing court may consider *only* information brought to the magistrate's attention" in deciding wheth-er an adequate basis was presented. Aguilar, supra, 378 U.S. 109, fn. 1, 84 S.Ct. 1511.

the tale he tells." People v. Coffey, 12 N.Y.2d 443, 452, 240 N.Y.S.2d 721, 726, 191 N.E.2d 263, 267, (1963). In *Jones*, supra and in McCray v. State of Illinois, 386 U.S. ——, 87 S.Ct. 1056, 18 L.Ed.2d 62 (March 20, 1967), the fact that the informant had previously given reliable information was of importance in the court's determination that probable cause existed.

■ Here, however, D'Arpe gave no basis for his statement to Judge Glowa that the informant was reliable. D'Arpe conceded that he made no independent investigation as to the truth of the informant's story and that, until the execution of the warrant, he had no personal knowledge that there was marijuana in petitioner's apartment (R: 58, 107). Therefore, as Judge Keating concluded, the standards set forth in *Aguilar* for establishing the reliability of the informant were not met.

■ Respondent contends for the first time, however, that there was probable cause for the search of petitioner's apartment even without a warrant. As for this contention, it is settled that the requirements of the Fourth Amendment apply to the states through the Fourteenth Amendment. Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Under the Fourth Amendment all searches and seizures must be undertaken only after a warrant has been obtained except (1) where "it is not practicable to secure a warrant", Carroll v. United States, 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925), or (2) where the search is incident to a lawful arrest, Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). See, United States v. Ventresca, supra, 380 U.S. 106–107, 85 S.Ct. 741.

■ It is obvious that the first exception does not apply. As for the second exception, there was no evidence in the record as to the exact time when petitioner was formally placed under arrest. The action of the federal agents in restraining petitioner and taking him to his apartment might be deemed an arrest by them. Similarly, the action of the federal and city officers outside the apartment building before petitioner took them to his apartment might constitute an arrest, particularly in view of the fact that petitioner had admitted that there was marijuana in his apartment. New York Code of Criminal Procedure, § 171; United States v. Viale, 312 F.2d 595, 600–601 (2d Cir. 1963); Bolger v. United States, 189 F. Supp. 237, 251 (S.D.N.Y. 1960), aff'd sub nom., Bolger v. Cleary, 293 F.2d 368 (2d Cir. 1961), rev'd on other grounds, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1963). There is no evidence that a formal arrest occurred in the two minutes or so that it took petitioner to lead the city and federal officers from the street to his apartment or in the few minutes it took petitioner's wife to dress before petitioner led the officers into the apartment and pointed out the marijuana (R: 53, 83–5). In any event, petitioner having already been detained, the arrest, if made at the apartment, would not have justified the search of the apartment. Gilbert v. United States, 291 F.2d 586, 595 (9th Cir. 1961), vacated on other grounds, 370 U.S. 650, 82 S.Ct. 1399, 8 L.Ed.2d 750 (1962); United States ex rel. Holloway v. Reincke, 229 F.Supp. 132 (D.Conn. 1964). Indeed, it has been held that a search conducted under the color of a warrant which is later determined to be invalid cannot, as an afterthought, be justified as incident to an arrest. United States v. Perez-Vega, 250 F.Supp. 429 (D.Puerto Rico 1966). Therefore, on the record as a whole, it cannot be said that the search in this case was incident to a lawful arrest as that exception has been restrictively defined by the courts. See, *Ker*, supra; compare *Preston*, supra.[3]

3. Respondent has not contended that petitioner consented to the search. On the facts disclosed in the Record—that petitioner was confronted by two federal of-

For the foregoing reasons, the search warrant was not validly issued and the seizure of marijuana in petitioner's apartment was unlawful. Accordingly, the within petition for a writ of habeas corpus is granted, and petitioner ordered discharged from custody under the present judgment of conviction. Opportunity will be afforded to either appeal from this grant of the writ or to retry petitioner if that procedure is deemed advisable. Therefore, execution of the writ will be stayed for a period of thirty days. At the end of that period of time, if there has neither been an appeal taken from this ruling nor an initiation of proceedings looking to petitioner's retrial, the writ will be executed and the petitioner released.

Pursuant to Title 28, § 2253 of the United States Code, the court certifies that there is probable cause for an appeal of this order in view of the 4–3 decision of the New York Court of Appeals on the issue here presented.

It is so ordered.

ficers in Manhattan who told him that a search warrant had been issued for his apartment, that he accompanied these officers to Queens because he did not want anyone to enter his apartment unless he was present, that he was shown the search warrant outside his apartment, and that there were five or six officers present —there could be no question of a consent. See, United States v. Smith, 308 F.2d 657, 663 (2d Cir. 1962).