**UNITED STATES of America**

v.

**Herbert H. BROWN, Jr.**

**Crim. No. 69–71–N.**

United States District Court,
E. D. Virginia,
Norfolk Division.

June 8, 1972.

William T. Mason, Jr., Asst. U. S. Atty., Norfolk, Va., for plaintiff.

George H. McNeal, Norfolk, Va., for defendant.

## MEMORANDUM ORDER

WALTER E. HOFFMAN, Chief Judge.

The crux of this case lies in the interpretation of the third paragraph of 18 U.S.C., section 2314, and, more specifically, what constitutes a "falsely made, forged, altered, or counterfeited" security which is transported in interstate commerce.[1]

Undoubtedly, under the evidence presented, the defendant committed a crime under the penal statutes of Virginia, but the undisputed facts do not make out a case under the federal statute upon which the indictment was based. If the defendant is tried and convicted in a state court, we feel certain that any sentencing judge would give due consideration to the fact that the defendant has been in federal custody for a substantial period of time—not entirely by reason of delays in the prosecution of his federal case, but primarily because the defendant absented himself from the jurisdiction prior to the time his case was initially scheduled for trial.

On February 27, 1971, the defendant entered the Burrow-Martin Drug Store at Virginia Beach, Virginia. He approached the clerk, Catherine B. Stebbins, and stated that he would like to purchase four (4) money orders in specific amounts; namely, $105.00, $90.00, $45.13, and $73.46. Burrow-Martin Drug Store is the authorized agent of American Express Company to issue valid money orders, and Catherine B. Stebbins was then acting in her official capacity as the duly authorized clerk to issue said money orders. The clerk did not demand the purchase price of the money orders in advance of issuing same. She proceeded to take the four separate money orders, ran them through a machine provided by American Express Company, which, in turn, printed the agent's symbol, and the amount of each money order, same bearing the signature of an AMEXCO officer. She placed the four money orders on a counter at which time the defendant grabbed them and ran from the store.

Within a ten-day period thereafter, the defendant cashed the money orders by placing his true name, "Herbert H. Brown, Jr.," on the lines opposite the words "to the order of" and "sender's name," and his correct address on the line opposite the word "address," with respect to three of the money orders. The fourth money order was made payable to "Sol's Restaurant" where he cashed same, but again the defendant placed his true name opposite the words "sender's name," and placed his correct address thereon.

The four money orders traveled in interstate commerce through customary

---

1. It is significant to note that the first paragraph of section 2314 refers to securities which have been "stolen, converted or taken by fraud" if the value is $5,000 or more. The second paragraph encompasses any scheme or artifice to defraud, etc., again involving money or property having a value of $5,000 or more. The third paragraph, involved herein, has no monetary limitation. While the indictment in the instant case alleged that the American Express Money Orders mentioned in the four counts were "falsely made, forged and stolen," the United States conceded that the word "stolen" was mere surplusage and the trial was confined to the "falsely made" and "forged" phase of the case.

banking channels to New York, where they were initially paid by AMEXCO and were later charged back to the banking institutions and Sol's Restaurant as the endorsers of the obligations.

Andrews, the American Express Company representative testifying at the instance of the prosecution, said that AMEXCO considered the money orders as obligations to pay when they were completed in part by the authorized agent. It is not the practice to require the purchaser to fill in the date, the payee's name, or the sender's name and address. Except for the agent's symbol and special imprint of the amount, nothing else is required. He did state, however, that the name of the payee and sender would have to be inserted before the money order could be honored for payment by AMEXCO, but that the names could be typewritten and need not be in the handwriting of anyone.

On this set of facts the government's case must fall. What we have from the undisputed testimony is a matter involving securities, the value of which do not separately or collectively remotely approach $5,000, which have been stolen. No "forged" name of the payee or sender was added by the defendant or anyone.

While there is dicta intimating that, even if the defendant uses his own signature on a traveler's check, the first person to fill it in necessarily created a forged security because the check is cashed on the credit of the issuer, United States v. Franco, 413 F.2d 282 (5 Cir., 1969), this comment must be interpreted in the light of the existing facts in that case. There the court was confronted with stolen *blank* traveler's checks which had not been processed by the agent's symbol and the machine imprint as to the amount. Actually, the defendant in *Franco* did not use his own name and the voluntary comment by the author of the opinion was manifestly unnecessary to a decision in the case. While this court agrees with the result in *Franco*, because it is obvious that the act of filling in the blank traveler's checks constituted a "falsely made" security, we cannot agree with the dicta if, in fact, the security had been otherwise validated by an authorized agent prior to its falling into the hands of one who thereafter used his own name and address before.

In *Franco*, supra, the opinion relies upon Castle v. United States, 287 F.2d 657 (5 Cir., 1961), and Berry v. United States, 271 F.2d 775 (5 Cir., 1959). A reading of *Castle* discloses that five American Express Company money orders were stolen from a shipment originating in Indiana and destined for American Express. A search pursuant to a warrant disclosed the money orders with the names of apparent senders and payees, both of which were fictitious. The money orders, when stolen, were blank, and the accused had used a check protector in Philadelphia by inserting the amount of $100 on each order and, in addition, had placed thereon the fictitious names of sender and payee. Clearly, *Castle* is an illustration of a "falsely made" security and does not warrant the gratuitous dicta in *Franco*. *Berry* approaches the issue by discussing the "true name" doctrine, but held it to be inapplicable as the accused denied any connection with the traveler's check. The facts in *Berry* are not revealed by the court's opinion.

Adverting to section 2314, we note that its origin is in the National Stolen Property Act of May 22, 1934, 48 Stat. 794. In 1939, paragraph three (3) of section 2314 was added, thus extending coverage to any "falsely made, forged, altered, or counterfeited securities," irrespective of the amount or value thereof. Quite significantly, however, the words "stolen, converted or taken by fraud" were omitted from paragraph three (3). The legislative history, Senate Committee on Judiciary, S.Rept.No. 674, 76th Cong., 1st Sess. (1939), indicates an obvious intention to extend the coverage of section 2314 in order to prohibit the actual false making or reproducing of securities. Had Congress so desired, it could have included coverage in-

volving a stolen security regardless of the value, but Congress apparently elected to reserve to the respective states the jurisdiction over the theft of securities having a value of less than $5,000.

In considering what this defendant did wrongfully in this case, we must answer that he stole the money orders. True, he had no legal authority to insert his own name on money orders which were not legally his property, even though they had been made pursuant to his direction. While there is authority to the contrary, Streett v. United States, 331 F.2d 151 (8 Cir., 1964), we do not suggest that an otherwise valid money order cannot be the subject of forgery or alteration by the use of fictitious names of the sender and payee. But when the defendant herein used his true name and correct address, we are required to hold that he does not come within the third paragraph of section 2314. By analogy, we refer to Gilbert v. United States, 370 U.S. 650, 82 S.Ct. 1399, 8 L.Ed.2d 750 (1962), wherein Gilbert, an accountant, received income tax refund checks payable to his clients, "Daniel H. & Charlene R. Bartfield, c/o R. Milo Gilbert," and endorsed said checks "Daniel H. Bartfield, Charlene R. Bartfield, R. Milo Gilbert, Trustee." In a prosecution for violation of 18 U.S.C. § 495, the Supreme Court held that an agency endorsement does not *per se* constitute a forgery under § 495, and the case was remanded for a new trial under proper jury instructions. The Supreme Court interpreted the word "forge" as at common law in accordance with the old (1847) English case of Regina v. White, 2 Car. & K. 404, 175 Eng.Rep. 167 (Nisi Prius, Book 6), where it is said, "indorsing a bill of exchange under a false assumption of authority to indorse it per procuration, is not a forgery, there being no false making." In sum, while there have been later changes in the English statute by the Forgery Act of 1913 providing that a document is forged "if the whole or any material part thereof purports to be made by or

on behalf or on account of a person who did not make it nor authorize its making," the basic principle is that there can be no false making or forgery when the only fraudulent act is a misrepresentation such as, in the present case, that the defendant was the lawful owner of the money orders.

*Gilbert* cites with approval, among others, Greathouse v. United States, 170 F.2d 512 (4 Cir., 1948), and Marteney v. United States, 216 F.2d 760 (10 Cir., 1954). In *Greathouse,* an opinion written by the late Judge Soper, checks were drawn on a Texas bank while the defendant was in South Carolina. The checks were signed "Woodruff Motor Sale, Inc., J. W. Greathouse," and cashed at the South Carolina bank with the understanding that the original bills of sale and certificates of title to certain automobiles would be attached to the checks, but Greathouse surreptitiously attached only copies of the title papers and retained the originals. The checks were dishonored by the Texas bank as no account existed in said bank, either in the name of Woodruff Motor Sale, Inc., or J. W. Greathouse. The latter, of course, sold the automobiles which were to have been the purported security for the checks, and pocketed the proceeds. Judge Soper quickly disposes of the contention that the checks were forgeries by holding that Greathouse, having signed both names with the knowledge of the cashier, could not have committed a forgery. In dealing with the issue of "false making," he states:

"* * * when the crime is charged to be the false making of a writing, there must be the making of a writing which falsely purports to be the writing of another. The falsity must be in the writing itself—in the manuscript. A false statement of fact in the body of the instrument, or a false assertion of authority to write another's name, or to sign his name as agent, by which a person is deceived and defrauded, is not forgery. There must be a design to pass as the genu-

ine writing of another person that which is not the writing of such other person."

To the same effect is *Marteney, supra,* which pertained to warehouse receipts where the quantity of grain was short to the extent of 380,000 bushels and were signed by the "true name." By analogy to the "true name" check, Judge Murrah said that "neither of them are false or forged in their execution, although they may be false in fact."

Some of the authorities seem to hold that once the obligation of the issuer is complete, such as in this case where the authorized agent placed the agent's symbol thereon and imprinted the amount with the special machine provided by AMEXCO for this purpose, it makes no difference if there is thereafter a forgery of another's name under a required countersignature or pursuant to completing the payee and sender names. Pines v. United States, 123 F.2d 825 (8 Cir., 1942); Streett v. United States, *supra;* United States v. Petti, 168 F.2d 221 (2 Cir., 1948). The present case does not go that far. We are inclined to agree with United States v. Bedgood, 453 F.2d 988 (5 Cir., 1972); Gearing v. United States, 432 F.2d 1038 (5 Cir., 1970), cert. denied 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331; and United States v. DiPietto, 396 F.2d 283 (7 Cir., 1968), in all of which cases there were obvious forgeries by the use of fictitious names of payee. Each case involved a forgery on the face of the instrument and thus differs from Prussian v. United States, 282 U.S. 675, 51 S.Ct. 223, 75 L.Ed. 610 (1931), where the Supreme Court held, prior to the enactment of paragraph three (3) of § 2314, that a forged *endorsement* by a purported payee of a government draft did not constitute a forgery of the draft. With AMEXCO requiring the completion of the money orders by inserting the names of the payee and sender prior to honoring same, the use of fictitious names may be prosecuted under § 2314 but, in this case, the defendant used his true name in each instance and, with respect to one money order, the true name of Sol's Restaurant as payee. Thus, we agree also with United States v. Smith, 426 F.2d 275 (6 Cir., 1970), where the money orders were stolen in *blank,* the defendant thereafter inserted the agent's symbol, the amount, and the sender's name, although he used his true name as payee. The Sixth Circuit there held that the completion of the *blank* money orders constituted a false execution (or making), as distinguished from a false representation, because the money orders, at the time of the theft, were not evidence of an obligation on the part of the issuing company. We find no fault with the foregoing decision, and we restrict the holding in the instant case to the particular facts herein presented.

An order finding the defendant not guilty on each count charging a violation of 18 U.S.C., § 2314, will be prepared by the Clerk and presented for entry.