Betty ASHER, Defendant-Appellant,

v.

UNITED STATES of America,
Plaintiff-Appellee.

No. 72–1966.

United States Court of Appeals,
Sixth Circuit.

Argued April 6, 1973.

Decided June 14, 1973.

Lowell W. Lundy (court appointed), Barbourville, Ky., for defendant-appellant.

Moss Noble, Asst. U. S. Atty., for plaintiff-appellee; Eugene E. Siler, Jr., U. S. Atty., Lexington, Ky., on brief.

Before PECK and LIVELY, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

Appellant, Betty Asher, was convicted of forgery under Title 18, U.S.C. § 495. She was the niece of Betty Lou Elliott who, as the widow of a Spanish War Veteran and as the dependent mother of one Willard Elliott who was killed in the Korean War, was receiving monthly pension checks from the Veterans' Administration. In 1963, the aunt, Betty Lou Elliott, was adjudged incompetent and remained so until her death. Betty Asher was appointed custodian for her incompetent aunt, and thereafter was officially recognized as "Custodian of Betty L. Elliott." Her aunt's pension checks were thereafter made payable to "Betty Asher, Custodian of Betty L. Elliott," were received by her, and were endorsed:

"Betty Asher

Betty L. Elliott"

They were accepted and cashed by the Veterans' Administration. The aunt died in 1965, but notice of her death was not given to the Veterans' Administration and the pension checks, made payable to "Betty Asher, Custodian of Betty L. Elliott," continued to be sent to the niece. Appellant endorsed these checks, in the above style, and converted the proceeds to her own use until July 1, 1971, when her conversions were discovered and the checks were stopped. A ninety-five count indictment was returned against appellant, charging violations of Title 18 U.S.C. § 495, in the following form and covering the respective dates of the cashing of the checks.[1]

"On or about the 31st day of January, 1966, in Bell County, in the Eastern District of Kentucky,

**BETTY ASHER**

with intent to defraud the United States, did utter and publish as true, Check No. 49,226,866, symbol 1073, dated January 31, 1966, in the amount of $75.00, payable to Betty Asher, Custodian of Betty L. Elliott, drawn on the Treasurer of the United States, with the falsely made and forged endorsement

Betty Asher
Betty L. Elliott

on the back of said check, the said Betty Asher then well knew said endorsement to be falsely made and forged in that her custodial relationship to said Betty L. Elliott had theretofore terminated by death."

Prior to trial, appellant's motion to dismiss, charging that the indictment did not charge a violation of Title 18 U.S.C. § 495, was denied. At the close of the proofs, a motion for direction of acquittal which asserted that appellant's conduct did not amount to forgery and was not otherwise in violation of § 495, was denied.

The government's brief correctly states the issue before us as follows:

"Where a custodial relationship has been terminated by death, and the custodian has fraudulently concealed the pensioner's death from the Veterans Administration and thereby continues to receive and cash monthly pension checks, is there a violation within the provisions of Section 495, Title 18, United States Code?"

We reverse.

Appellant did not take the stand and there was clear proof that she knew of her own wrongdoing—that she had, in effect, stolen the proceeds of the involved pension checks from the United States Government. With some reluctance and misgivings, we are constrained, however, to hold that the government did not

1. Twenty-nine of the counts were dismissed as barred by the Statute of Limitations. Appellant was convicted upon the remaining sixty-six counts and sentenced to prison for three years.

make out a case of forgery within the contemplation of Title 18 U.S.C. § 495.[2]

For our ruling, we rely primarily upon the decision of the United States Supreme Court in Gilbert v. United States, 370 U.S. 650, 82 S.Ct. 1399, 8 L.Ed.2d 750 (1962), and the Tenth Circuit's decision in Selvidge v. United States, 290 F. 2d 894 (10th Cir. 1961), which the Supreme Court approved in its *Gilbert* decision. Therein the Supreme Court said that *Selvidge*,

> "held that 'forgery' under § 495 does not embrace a purported, but misrepresented, agency endorsement (hereafter called simply an 'agency endorsement'). * * * For reasons given in this opinion we agree with the Tenth Circuit." 370 U.S. at 652, 82 S.Ct. at 1401.

We are of the view that appellant here did no more than endorse the name of the payee of the check, viz: herself, and the writing of her own name was not a forgery. Her endorsement on the fraudulently cashed checks was in the same style as had been the custom during the period that she had been properly receiving and endorsing the checks. All of the checks, before her aunt's death and afterward, were payable to appellant as "custodian" and the style of her endorsement was merely,

> "Betty Asher
> Betty L. Elliott"

This endorsement never changed. The government does not charge that appellant, in writing her aunt's name, was holding out that such writing was in fact the signature of her aunt. A technically correct endorsement of all of the checks issued while appellant was, in fact, "custodian" would have been "Betty Asher, Custodian of Betty L. Elliott." The endorsement actually used prior to, and after, the aunt's death was accepted as sufficient by the Veterans' Administration. At the trial, a handwriting expert testified that the handwriting of "Betty Asher" and "Betty L. Elliott" was by the same hand, and there was no evidence that appellant ever wrote the name of her aunt, Betty Elliott, representing that such was her aunt's signature. There was no evidence that appellant ever *forged* her aunt's name. The handwriting expert testified that all of the checks were endorsed by the person to whom the checks were made payable.

While we rely on Gilbert v. United States, 370 U.S. 650, 82 S.Ct. 1399, 8 L. Ed.2d 750, and Selvidge v. United States, 290 F.2d 894, *supra*, we have in mind that the facts in each of them expose some distinction from the case at bar. We do not consider, however, that such distinctions forbid our employing *Gilbert* and *Selvidge* as controlling authority here. Involved in *Gilbert* were tax refund checks payable to "Daniel H. and Charlene R. Bartfield, % R. Milo Gilbert, 519 Taft Building, Hollywood 28 Calif." The accused Gilbert, defendant in that case, endorsed the checks in the following manner:

> "Daniel H. Bartfield
> Charline R. Bartfield
> R. Milo Gilbert, Trustee"

There, as here, the accused's own signature on the endorsement was his own. He claimed that he had a written power of attorney from the Bartfields which authorized him to endorse the checks as he did. The Bartfields denied this. From a fair reading of the case, we conclude that the government was not there claiming that Gilbert's writing of the names of the Bartfields was a representation that they had, in fact, written their own names on the endorsement. It was his claim that, at most, his endorsement was an "agency endorsement." He asked that the jury be instructed that an "agency endorsement" was not forgery

---

2. Upon oral argument, government counsel suggested that appellant could also have been charged with violation of 38 U.S.C. § 3501. We express no opinion on this but mention that if such action is still available, many of the specific check cashing incidents would not be barred by the five year general statute of limitations— 18 U.S.C. § 3282. Appellant's relevant misconduct continued until 1971.

under § 495. This was refused, and such refusal was held to be error.

Gilbert's endorsement described himself as "Trustee," whereas Betty Asher did not use any qualifying adjective after her own genuine signature, such as "Custodian." In our view, her failure to do so, does not impair the validity of our conclusion that *Gilbert* commands the decision we make. She was the payee of the checks and her endorsement, without using the word custodian, had been accepted as sufficient in the earlier, valid negotiation of the checks. We believe that the wrongful endorsement must be viewed as an "agency endorsement," however fraudulent. She was, indeed, representing that she was still the "Custodian" or agent of her deceased aunt. In *Gilbert*, the Supreme Court said:

> "Where the 'falsity lies in the representation of facts, not in the genuineness of execution,' it is not forgery." 370 U.S. at 658, 82 S.Ct. at 1404.

For this quoted statement, the Supreme Court cited Marteney v. United States, 216 F.2d 760, 763–764 (10th Cir. 1954).

In the *Selvidge* case, the defendant had had authority to endorse her employer company's name on its incoming checks for deposit only. But on the checks which were the subject of the indictment, she wrongfully endorsed the name of her employer, adding thereto her own signature as follows: "By Thelma L. Selvidge." The Court there said:

> "If Selvidge had merely endorsed the name of her principal and cashed the checks contrary to her instructions, the crime of forgery would have been complete. It is a rule of general application that an agent may commit forgery by making or signing an instrument in disobedience of his instructions or by exceeding his authority. But when she added her genuine signature purporting to endorse the checks as the agent of her named principal, although she had no authority to do so, she was not guilty of forgery." 290 F.2d at 895.

We do not think that the word "By" in front of her own name makes *Selvidge*

without analogy here. In Wright v. United States, 172 F.2d 310, also cited by the Supreme Court in *Gilbert*, the Ninth Circuit said:

> "[I]t has generally been held that the genuine making of a writing for the purpose of defrauding another is not forgery." 172 F.2d at 311.

We reverse and direct entry of an order acquitting appellant of the charge of forgery under 18 U.S.C. § 495.