**UNITED STATES of America,**
**Plaintiff,**

v.

**Ben DIAZ, Defendant.**

**Magistrate's No. 346.**

**No. 2–A.**

United States District Court,
D. Arizona.

Dec. 12, 1973.

William C. Smitherman, U. S. Atty., presented by Gerald S. Frank, Asst. U. S. Atty., Tucson, Ariz., for plaintiff.

Harold A. Donegan, Jr., Scottsdale, Ariz., for defendant.

## MEMORANDUM AND ORDER ON APPEAL FROM MAGISTRATE

FREY, District Judge.

Appellant, Ben Diaz, was adjudged guilty by a United States Magistrate, of appropriating Indian artifacts (objects of antiquity) on Government land, in violation of Title 16, United States Code, Section 433. Mr. Diaz consented in writing to be prosecuted before the Magistrate pursuant to Title 18, United States Code, Section 3401, after being apprised of his right to be tried before a District Court Judge and the consequences of a waiver of same.

On September 13, 1973, appellant was sentenced to payment of a fine of $500 to be paid by September 24, 1973. Appellant has appealed and urges three assignments of error: (1) the Court erred in holding that any object less than five years old is an "object of antiquity", (2) the Court erred in finding appellant to have appropriated an object situated on lands owned or controlled by the government when no evidence was introduced placing appellant on such lands, and (3) the Court erred in shifting the burden of proof to appellant.

On March 13, 1973, Joe P. Sparks, an attorney and expert on Apache Indian culture observed the contents of a box, designated Government's Exhibit Number 1, containing authentic Apache religious artifacts, on display in a storefront window in Scottsdale, Arizona. Sparks learned that appellant was the owner of the artifacts. He called appellant on the telephone inquiring as to the asking price for the artifacts. During the telephone conversation appellant stated that he had found approximately twenty-two face masks, headdresses, ocotillo sticks, bull-roarers, fetishes and muddogs in a medicine man's cave on the San Carlos Indian Reservation. The specific area where appellant said he found the artifacts was within five or six miles of the Triplett's place near Peridot. Appellant told Sparks that he would not sell the artifacts for twelve hundred dollars because he had been offered that much and refused the offer, but that he would probably be asking several thousand dollars.

On March 18, 1973, Agent Hunt and another FBI agent drove to appellant's residence where Agent Hunt indicated to appellant that he was interested in the artifacts that were for sale. Appellant directed the agents to the back of his house where the artifacts contained in Government Exhibits 2 through 7 were located. At this time Agent Hunt advised appellant that he was an FBI agent and informed appellant of his Miranda rights. Appellant elected to continue talking to the agents. Appellant stated that he may have obtained the objects from the San Carlos Indian Reservation, but when asked if he had ever told anyone that he had removed the artifacts from the reservation, appellant terminated the converstation.

■ Acting in the capacity of an appellate court, this Court is required to accept the finding of fact of a Magistrate unless such finding is clearly erroneous. Campbell v. United States, 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1962); United States v. Graves, 428 F.2d 196 (5th Cir. 1970); United States v. Margraf, 347 F.Supp. 230 (E.D.Pa. 1972).

■■ Appellant disputes the implicit finding in the verdict of guilty that the artifacts were objects of antiquity within the meaning of Title 16, United States Code, Section 433. Said Section reads as follows:

"Any person who shall appropriate, excavate, injure or destroy any historic or prehistoric ruin or monument, or any object of antiquity, situated on lands owned or controlled by the Government of the United States, without permission of the Secretary of the Department of the Government having

jurisdiction over the lands . . . shall . . . be fined in a sum of not more than five hundred dollars or be imprisoned for a period of not more than ninety days, or shall suffer both fine and imprisonment, in the discretion of the court."

The instant case appears to be one of first impression with respect to the legal definition "antiquity".

The testimony of Dr. Keith Basso, Professor of Anthropology at the University of Arizona, appears to have weighed heavily in the Magistrate's determination of the definition of the word "antiquity". Dr. Basso testified that something made today could very easily become an "antiquity" tomorrow. He testified that the artifacts in the instant case were, in his opinion "antiquities" and explained as follows:

"They are not of the present. They are very much of the past and they are decided and viewed by Apaches as articles which are, if left alone, able to return to nature, to their former state, to disintegrate slowly according to the natural processes of time, and to that extent to return to the past from whence they came. This too, is a religious tenant of the people involved." (TR p. 61)

Dictionary definitions of the word "antiquity" are of no aid in the present case. When the pertinent statute was enacted in 1906, the Apache Indian Reservations were approximately 30 years old, therefore, under such definitions there could be no objects of "antiquity", in the common usage of the term, on Apache lands. In a case such as this, there can be no specific definite time limit as to when an object becomes an "antiquity". The determination can be made only after taking into consideration the object or objects in question, the significance, if any, of the object and the importance the object plays in a cultural heritage.

The statute in question must be construed as one which was intended to protect the American Indians from those who would appropriate, excavate or injure any historic monument or object of "antiquity" situated on Indian lands. It was clearly not the intent of Congress to allow a person to enter upon Indian lands and appropriate religious or sacred artifacts, such as the ones in this case, without threat of prosecution.

In light of Dr. Basso's expert testimony, the uniqueness of the Indian artifacts, and the fact that this is a case of first impression the Magistrate's implicit finding that the artifacts were objects of "antiquity" is *not* clearly erroneous.

■ Appellant argues that there is not enough evidence to show appellant appropriated artifacts situated on lands owned or controlled by the United States. This argument is without merit.

There was substantial evidence that appellant did in fact appropriate the artifacts from the San Carlos Indian Reservation. Mr. Sparks testified appellant told him in a phone conversation that, while hunting on the San Carlos Reservation, he came upon a cave containing the objects in question. Appellant stated that he removed the material and took it home.

Dr. Basso and Mr. Cassador, an Apache Medicine Man, testified that the objects in Exhibits 1 through 7 were authentic religious and ceremonial materials which were customarily placed in caves or other remote places on the reservation, after they had been used once. Mr. Cassador testified that the Indian headdresses were probably made by Ed Lee, a San Carlos Apache Medicine Man between the years 1969 and 1970. Mr. Cassador recognized them as having been made by Mr. Lee because of their distinctive markings and coloring.

Although appellant denied ever having been on the reservation, the reviewing Court is required to view the evidence in light most favorable to the Government. Carr v. United States, 317 F.2d 409 (9th Cir. 1963); Gilbert v. United States, 291 F.2d 586 (9th Cir. 1961), vacated, 370 U.S. 650, 82 S.Ct. 1399, 8 L.Ed.2d 750. It is the exclusive function of the

trier of fact to determine the credibility of witnesses, resolve evidentiary conflicts and draw reasonable inferences from proven facts. Therefore, this Court must assume that the Magistrate resolved all such matters in a manner which would support the Judgment.

Finally, appellant argues that the trial Court having no evidence about appellant's presence on the reservation and having disbelieved appellant's story, the burden of proof shifted from the Government to appellant. This argument is also without merit.

Appellant testified that while returning from a hunting trip, he picked up an Indian hitchhiking along the road. The hitchhiker was carrying all the Indian artifacts, designated as Government Exhibits 1 through 7, in just two bags and a small box. Appellant stated that he became curious about the objects and after some discussion with the hitchhiker, decided to buy them for $290. According to his testimony, appellant was not sure of the significance of the artifacts; yet he paid the $290 right on the spot. In addition, at the time appellant bought the objects, he was out of a job.

The Magistrate, as trier of fact had the right to disbelieve appellant's story. A trier of fact is not compelled to accept and believe the self-serving stories of a vitally interested defendant. His evidence may not only be disbelieved, but from the totality of the circumstances such as inconsistencies of the record, objective testimonial evidence and the manner in which the defendant testifies, a contrary conclusion may be properly drawn. United States v. Cisneros, 448 F.2d 298 (9th Cir. 1971); Dyer v. MacDougall, 201 F.2d 265 (2nd Cir. 1952).

All that is required of the trier of fact is that he weigh all the evidence, direct or circumstantial, against the standard of reasonable doubt. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1955). In the present case the Magistrate weighed all the evidence presented by both parties in arriving at his decision. At no time did the burden of proof shift to appellant.

Upon careful review, this Court finds that the Magistrate's determination was correct; therefore,

It is ordered that the judgment and conviction heretofore entered by the Magistrate, is affirmed.

It is further ordered that the Clerk of this Court forthwith mail a copy of this Memorandum and Order to the Magistrate and to all counsel of record.