COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Petty, Beales and Chafin
Argued at Richmond, Virginia


WILLIAM LLOYD HENRY

OPINION BY
v.        Record No. 0631-13-2                          JUDGE WILLIAM G. PETTY
                                                        FEBRUARY 18, 2014

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LOUISA COUNTY
John R. Cullen, Judge Designate

(Steven Shareff, on briefs), for appellant.  Appellant submitting on
briefs.

Susan Baumgartner, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


William Lloyd Henry was convicted of two counts of forgery of a public record, two

counts of uttering a forged public record, all in violation of Code § 18.2-168, and two counts of

perjury in violation of Code § 19.2-161.  On appeal, Henry argues that the trial court erred in

overruling his motion to strike the forgery and uttering charges on the ground of insufficient

evidence.  For the following reasons, we agree with Henry and reverse the forgery and uttering

convictions.  Henry also argues that the trial court erred in overruling his motion to strike the

perjury charges on the ground that the Commonwealth failed to prove that his real estate was

readily convertible into cash pursuant to Code § 19.2-159.  As discussed below, Code § 19.2-159

does not require that real estate be readily convertible into cash; thus, Henry's second assignment

of error fails, and we affirm his convictions for misdemeanor perjury.

I. BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

At the conclusion of a bench trial, Henry was convicted of two counts of forgery of a public record, two counts of uttering a forged public record, and two counts of perjury. The convictions stem from information Henry provided to a court clerk to determine his eligibility for indigent defense services. During two meetings with the clerk, Henry stood on one side of the window while the clerk stood on the other side of the window and asked the questions to fill out the financial statements of indigency.[1] On a form dated May 6, 2011, the clerk recorded that Henry was receiving SNAP[2] assistance, that he was unemployed, and that he had no assets. Under the assets section of the form, the clerk placed a zero on the line for cash on hand, bank accounts, any other assets, real estate, motor vehicles, and other personal property.[3] The clerk passed the completed form under the window, and Henry signed and dated it. Above the signature line, the form contained the following: "This statement is made under oath. Any false statement may constitute a violation of law under Virginia Code § 19.2-161 and be subject to criminal penalty, including incarceration. I hereby state that the above information is correct to

---

[1] Although the clerk did not recall Henry's answers specifically, the clerk testified as to the general procedure followed. Henry does not contest the accuracy of the responses recorded by the clerk.

[2] SNAP stands for "Supplemental Nutrition Assistance Program."

[3] Henry was indicted on nineteen counts stemming from six different financial statements. On defense motion, the court struck all the charges except for a forgery, an uttering, and a perjury charge for the May 6, 2011 and January 6, 2012 financial statements. The court concluded that the lack of specific information entered on the "real estate" line on the other financial statements raised a question as to whether Henry was specifically asked about the real estate.

the best of my knowledge." In reference to the question regarding real estate, the clerk testified that she always asks someone "if they own a home or are buying a home."

On January 6, 2012, Henry, again seeking a court-appointed counsel, approached the same clerk that filled out the May 6, 2011 form. On the January 6, 2012 form, the clerk recorded that Henry was receiving SNAP assistance and that he was unemployed. The clerk recorded "rental property 500/mo" on the "other income sources" line. Twenty dollars, listed as "cash on hand," was the only entry other than zero in the assets section of the form, which, like the May 6, 2011 form, allowed entries for cash on hand, bank accounts, any other assets, real estate, motor vehicles, and other personal property. Henry once again signed the form under oath, after which the clerk signed as well.

In spite of Henry's representation to the clerk that he owned no real estate, Henry was gifted a parcel of real estate on September 10, 1992 from his parents. The custodian for the land records in Louisa County testified that there was no record of this parcel having been transferred out of Henry's ownership prior to June 26, 2012, the date that Henry gifted the land to someone else.

## II. ANALYSIS

Henry notes two errors in the trial court's decision. First, Henry argues that the trial court erred in overruling his motion to strike charges of forgery and uttering because the alleged misrepresentation on the indigency form did not constitute a forgery. Second, Henry argues that the trial court erred in overruling his motion to strike the perjury charges on the ground that the Commonwealth failed to prove that his real estate was readily convertible into cash pursuant to Code § 19.2-159. For the following reasons, we reverse the forgery and uttering convictions and affirm the two perjury convictions.

"'When reviewing the sufficiency of the evidence to support a conviction, [this] Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it.'" Mayfield v. Commonwealth, 59 Va. App. 839, 850, 722 S.E.2d 689, 695 (2012) (quoting Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008)).  In our review, we have "a duty to examine all the evidence that tends to support the conviction." Bolden, 275 Va. at 147, 654 S.E.2d at 586.  Accordingly, "[w]e 'must discard all evidence of the accused that conflicts with that of the Commonwealth and regard as true all credible evidence favorable to the Commonwealth and all fair inferences reasonably deducible therefrom.'" Holcomb v. Commonwealth, 58 Va. App. 339, 346, 709 S.E.2d 711, 714 (2011) (quoting Lea v. Commonwealth, 16 Va. App. 300, 303, 429 S.E.2d 477, 479 (1993)).

Moreover, "[a]n appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)).  "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson, 443 U.S. at 319).  "'This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" Brown v. Commonwealth, 56 Va. App. 178, 185, 692 S.E.2d 271, 274 (2010) (quoting Jackson, 443 U.S. at 319).

## A. Forgery

Henry was charged with forging public records in violation of Code § 18.2-168,[4] which states:

---

[4] Henry was also convicted for two counts of uttering a forged public record in violation of the same code section.  Because we conclude that his actions did not constitute a forgery, we must, of necessity, reverse Henry's convictions for uttering a forged record.

- 4 -

If any person forge a public record, or certificate, return, or attestation, of any public officer or public employee, in relation to any matter wherein such certificate, return, or attestation may be received as legal proof, or utter, or attempt to employ as true, such forged record, certificate, return, or attestation, knowing the same to be forged, he shall be guilty of a Class 4 felony.

"Forgery is a common law crime in Virginia. It is defined as 'the false making or materially altering with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability.'" Rodriquez v. Commonwealth, 50 Va. App. 667, 671, 653 S.E.2d 296, 298 (2007) (quoting Fitzgerald v. Commonwealth, 227 Va. 171, 173-74, 313 S.E.2d 394, 395 (1984)). "At common law, to constitute a forgery, there must be a false making with the intent to defraud." Id. at 673, 653 S.E.2d at 299. [5]

However, "[w]here the 'falsity lies in the representation of facts, not in the genuineness of execution,' it is not forgery." Gilbert v. United States, 370 U.S. 650, 658 (1962) (quoting Marteney v. United States, 216 F.2d 760, 763-64 (10th Cir. 1954)). Furthermore, "[f]orgery is a crime aimed primarily at safeguarding confidence in the genuineness of documents relied upon in commercial and business activity. Though a forgery, like false pretenses, requires a lie, it must be a lie about the document itself: the lie must relate to the genuineness of the document." 3 Wayne R. LaFave, Substantive Criminal Law § 19.7(j)(5) (2d ed. 2003) (footnotes omitted).

Falsifying the genuineness of a document is so critical to the offense of forgery that "when a person writes a letter or completes a loan application or other instrument and signs it with his own name, he is not guilty of forgery because a false statement is contained therein, even if he knew it was false and acted with intent to defraud."

Vizcarra-Ayala v. Mukasey, 541 F.3d 870, 875 (9th Cir. 2008) (quoting 4 Wharton's Criminal Law § 487 (15th ed.)). In fact, "'[i]n criminal cases the great weight of authority holds false

---

[5] We note that a prosecution for forgery under Code § 18.2-168 does not require proof of prejudice to another's rights. See Campbell v. Commonwealth, 246 Va. 174, 431 S.E.2d 648 (1993) (holding that actual harm or prejudice to the rights of another was not an element of the crime of forgery of public records at English common law or in this Commonwealth).

statements in or fraudulent execution of otherwise valid instruments not to be forgery within its common law or unexplained meaning.'" United States v. Jones, 553 F.2d 351, 355 (4th Cir. 1977) (quoting First National Bank of South Carolina v. Glens Falls Ins. Co., 304 F.2d 866, 870 n.1 (4th Cir. 1962)).

Both Henry and the Commonwealth rely on this Court's opinion in Rodriquez for the resolution of this case. In Rodriquez, a police officer initiated a traffic stop of Rodriquez's vehicle because it had expired plates. Rodriquez, 50 Va. App. at 670, 653 S.E.2d at 298. Rodriquez did not have an operator's license in his possession. Id. In preparing two summonses, the officer asked Rodriquez for his identifying information and the defendant responded with that of his brother rather than himself. Id. Rodriquez then illegibly signed his own name on the summonses. Id. Consequently, Rodriquez was convicted of two counts of forgery and two counts of uttering a forged public document, both under Code § 18.2-168. Id. at 669, 653 S.E.2d at 297. This Court upheld the convictions, reasoning that "[a]lthough Rodriquez did not personally write the false information, he provided the information to [the officer] as he created the documents and, in doing so, Rodriquez engaged in the 'false making' of the two public documents." Id. at 672, 653 S.E.2d at 298.

Henry argues that the crux of the issue is that a document is not "falsely made" merely because it contains misrepresentations of fact within it. Henry distinguishes this case from Rodriquez by noting that the summonses created in Rodriquez were entirely false documents. Henry points to Brown v. Commonwealth, 56 Va. App. 178, 188, 692 S.E.2d 271, 276 (2010) (reversing the conviction because "nothing in the record suggests that the [documents] were anything other than what they purported to be"), for the proposition that the gravamen of forgery is the want of genuineness or authenticity in a document. Henry also points to this Court's footnote in Rodriquez distinguishing the summonses in Rodriquez from "tax rolls [that]

contained false and fraudulent entries [where] this false information did not alter the authenticity of the tax rolls" and noting that the summonses were "entirely fraudulent" and "themselves were 'lies.'" Rodriquez, 50 Va. App. at 672 n.2, 653 S.E.2d at 299 n.2. Thus, Henry contends that his actions were not forgery because the financial statements the clerk filled out and he signed were still financial statements, even if they were financial statements containing a lie. According to Henry, the document must purport to be something that it is not for a forgery conviction to be upheld.

The Commonwealth argues that "[t]he true gravamen of § 18.2-168 . . . is injecting fabricated or false information into the public record, where it may be acted upon." Thus, according to the Commonwealth, "Henry's falsification was just that: a lie entered into the public record to obtain appointed counsel rather than having to use his own assets to hire counsel."

We agree with Henry that in order for Henry's forgery conviction to be upheld, the Commonwealth was required to prove that Henry's conduct with respect to the financial statements altered the genuineness and authenticity of those documents, making them *not in fact what they purported to be*. In Rodriquez, this Court held that the summonses were forged because the false identifying information that Rodriquez provided in their making transformed them into something other than what they purported to be—the documents purported to be summonses for Rodriquez but were forged to be summonses for Rodriquez's brother. Rodriquez, 50 Va. App. at 670, 653 S.E.2d at 298. Indeed, "Rodriquez provided false and fraudulent information in order to create summonses that *were entirely fraudulent and not authentic*. The summonses themselves were 'lies.'" Id. at 672 n.2, 653 S.E.2d at 299 n.2 (emphasis added). Based on this conclusion, we distinguished the holding in Maryland v. Reese, 388 A.2d 122, 127 (Md. 1978), where the Maryland Court of Appeals concluded that a false entry in a county tax roll did not constitute a forgery because "a document is not considered false

for purposes of the law of forgery merely because it contains a false statement of fact." The distinction we noted in Rodriquez is not applicable to the facts before us. Like the tax rolls in Reese, and unlike the summonses in Rodriquez, Henry's statement of indigency "merely . . . contain[ed] a false statement of fact." Id. Thus, this case is not controlled by our holding in Rodriquez.

Moreover, in Brown, we cited Rodriquez to support our conclusion that forgery was not present because nothing in the record suggested that the documents in that case were "anything other than what they purported to be." Brown, 56 Va. App. at 188, 692 S.E.2d at 276. There, the documents in question were vouchers that were "issued improperly because the underlying reservations were not paid for." Id. at 182, 692 S.E.2d at 273. Like the financial statements here, the vouchers in Brown were issued under the correct names and the material nature of the vouchers themselves was not altered. Id. at 188, 692 S.E.2d at 276.[6]

Here, unlike the summonses in Rodriquez, the documents in question were in fact what they purported to be. The documents purported to be financial statements for William Lloyd Henry and remained financial statements for William Lloyd Henry despite Henry's alleged misrepresentations about his real estate assets. Although the financial statements ultimately contained "a lie" (because the full extent of Henry's real estate assets was omitted), the material character of the documents themselves was not forged or altered; they remained authentic—the lie was not "about the document itself." See 3 LaFave, supra, § 19.7(j)(5). As we noted, "[w]here the 'falsity lies in the representation of facts, not in the genuineness of execution,' it is not forgery." Gilbert, 370 U.S. at 658 (quoting Marteney, 216 F.2d at 763-64).

_____

[6] In a review of published decisions to date addressing the merits of a forgery charge under Code § 18.2-168, Rodriquez is the only decision in which a forgery conviction was upheld when the defendant actually signed his own name to the document in question, but, even then, we recognized that the signature was intentionally illegible.

- 8 -

Therefore, because Henry's conduct did not amount to a false making of the financial statements sufficient to alter their material nature—making them something other than what they purported to be—we hold that the trial court erred in overruling Henry's motion to strike the forgery charges. Furthermore, because there can be no uttering when the document that is the basis of the charge was not a forgery, Brown, 56 Va. App. at 189, 692 S.E.2d at 276-77, Henry's convictions for uttering must also be reversed.

## B. Perjury

Henry appeals his convictions for perjury under Code § 19.2-161 based on the false statements in his financial statements to determine indigency. Code § 19.2-161 states, "Any person charged with a misdemeanor punishable by confinement in jail who shall falsely swear or who shall execute the statement provided for in § 19.2-159 knowing such statement to be false shall be guilty of a Class 1 misdemeanor."

In determining an accused's indigency, Code § 19.2-159 requires "a thorough examination of the financial resources of the accused." Among other things, the court should give consideration to the following:

> All assets of the accused which are convertible into cash within a reasonable period of time without causing substantial hardship or jeopardizing the ability of the accused to maintain home and employment. Assets shall include all cash on hand as well as in checking and savings accounts, stocks, bonds, certificates of deposit, and tax refunds. All personal property owned by the accused which is readily convertible into cash shall be considered, except property exempt from attachment. Any real estate owned by the accused shall be considered in terms of the amounts which could be raised by a loan on the property. . . .

Code § 19.2-159(B)(2).

Henry contends that by failing to produce evidence of a clear title search, the Commonwealth did not meet its burden of proof that the real estate he owned, and omitted from his financial statements, was readily convertible to cash. Accordingly, Henry asserts that Smith

v. Commonwealth, 12 Va. App. 606, 405 S.E.2d 626 (1991), merits reversal of his convictions for perjury. We disagree.

Although Smith concerned an appellant's conviction for perjury under Code § 19.2-161 based on his negative response in an indigency statement, the assets in question in that case were items of personal property, not real estate. See id. at 609, 405 S.E.2d at 628; see also Black's Law Dictionary 1337 (9th ed. 2009) (defining personal property as "[a]ny movable or intangible thing that is subject to ownership and not classified as real property" and real property as "land and anything growing on, attached to, or erected on it"). In Smith, the defendant was convicted of perjury for stating under oath on his financial statement to determine eligibility for indigent defense services that he did not own a motor vehicle. Smith, 12 Va. App. at 607-08, 405 S.E.2d at 627. This Court reversed the conviction because the record established that Smith's car had been confiscated (and ultimately never released to him) at the time he signed the indigency statement and that he never held the title to a dirt bike. Id. at 608-09, 405 S.E.2d at 627-28. Thus, the items were not "readily convertible to cash" within the meaning of Code § 19.2-159 at the time Smith signed the indigency statement. Id.

Here, not only is the asset in question real estate, but the evidence in this case established that Henry held title to the property at the time he signed the financial statements asserting that he did not own real estate assets. Indeed, Henry received the property as a gift from his parents on September 10, 1992, and the custodian for the land records in Louisa County testified that there was no record of this parcel having been transferred out of Henry's ownership before he signed the financial statements in question.

Furthermore, Code § 19.2-159 makes clear that all assets readily convertible to cash must be considered on the financial statement but "real estate owned by the accused shall be considered in terms of the amounts which could be raised by a loan on the property." Thus, a

plain reading of the statute demonstrates, contrary to Henry's assertion, that there is no requirement that real estate listed on the financial statement (and considered by the court) be readily convertible to cash. See Appalachian Power Co. v. State Corp. Comm'n, 284 Va. 695, 706, 733 S.E.2d 250, 256 (2012) ("When a statute is unambiguous, we must apply the plain meaning of that language."). Instead, the only requirement is that the real estate be "considered in terms of the amounts which could be raised by a loan on the property."[7]

Therefore, because Code § 19.2-159 does not require that real estate be readily convertible into cash, Henry's second assignment of error fails. Accordingly, we affirm Henry's convictions for perjury under Code § 19.2-159 because the record establishes that Henry owned real estate at the time that he signed under oath that he did not.

### III. CONCLUSION

For the foregoing reasons, we reverse the forgery and uttering convictions and affirm the two perjury convictions.

Affirmed in part;<br>
reversed and dismissed in part.

---

[7] The Commonwealth entered into evidence at trial the Louisa County Assessor's Office field data sheet, which established that the home Henry owned had a total assessed value of $156,400. Further, there was testimony that there was no transfer of the property prior to the date of the offenses. Thus, it was reasonable for the trial court to conclude that there was sufficient equity in the home to allow Henry to secure a loan against the property.