COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Petty and Chafin
Argued at Richmond, Virginia

UNPUBLISHED

ALEXANDER RAY THOMPSON, S/K/A
 RAY ALEXANDER HUGHES

MEMORANDUM OPINION[*] BY
JUDGE TERESA M. CHAFIN
APRIL 9, 2019

v.       Record No. 0262-18-2

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Beverly W. Snukals, Judge

Ottie E. Allgood, Jr., Assistant Public Defender, for appellant.

Leah A. Darron, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


At the conclusion of a bench trial, the Circuit Court of the City of Richmond convicted

the appellant of four counts of forgery of a public record in violation of Code § 18.2-168.  On

appeal, the appellant contends that the evidence presented at his trial failed to establish that he

forged the public records at issue.  For the following reasons, we agree and reverse the

appellant's convictions.[1]

I.  BACKGROUND

"Under well-settled principles of appellate review, we consider the evidence presented at

trial in the light most favorable to the Commonwealth, the prevailing party below[, and] accord

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] As we conclude that the evidence presented at the appellant's trial failed to prove that
he forged the public records at issue, we do not reach the appellant's second assignment of error
arguing that the evidence failed to establish his "intent to defraud."

the Commonwealth the benefit of all inferences fairly deducible from the evidence." Wilkins v. Commonwealth, 292 Va. 2, 6-7 (2016). So viewed, the evidence is as follows.

The appellant was born in the Panama Canal Zone on October 6, 1965. The appellant's mother, Elvira Riviere, was married to Calvin Thompson at the time of the appellant's birth. Therefore, the appellant was given the name "Ray Alexander Thompson Riviere."[2]

Although the appellant was a Panamanian citizen, he grew up in both Panama and the United States, spending a significant amount of time living with family members in Richmond. At some point, the appellant obtained a driver's license from the Virginia Department of Motor Vehicles ("DMV") using the name "Alexander Ray Thompson." In 1995, the appellant was convicted of a sex offense and subsequently deported. The appellant returned to the United States shortly after his deportation, and he registered as a sex offender as "Alexander Ray Thompson" in 2006.

The appellant was arrested for illegally entering the United States at some point after he returned to the country following his initial deportation. Throughout the course of lengthy legal proceedings, DNA testing confirmed that the appellant's biological father was his mother's first husband, a United States citizen named David Hughes. While the appellant was potentially eligible for United States citizenship based on Hughes's paternity, he was nevertheless deported to Panama in 2009.

When the appellant returned to Panama, he initiated court proceedings to establish Hughes's paternity. On April 29, 2011, a Panamanian court entered an order declaring that Hughes was the appellant's biological father. The same order also changed the appellant's name to "Ray Alexander Hughes Riviere." The appellant then obtained a reissued birth certificate

---

[2] The inclusion of "Riviere," the surname of the appellant's mother, in the appellant's name may reflect the particular naming convention used in Panama. See, e.g., Santos v. Thomas, 830 F.3d 987, 990 n.1 (9th Cir. 2016).

from the Republic of Panama. Like the April 29, 2011 court order, the reissued birth certificate stated that the appellant's father was Hughes and that his name was "Ray Alexander Hughes Riviere." After the appellant obtained the April 29, 2011 court order and the reissued birth certificate, he returned to the United States and applied for a passport. The Department of State issued the appellant a passport in the name of "Ray Alexander Hughes" on December 2, 2011.

Upon his return to the United States, the appellant completed a series of forms in order to obtain a Virginia identification card and driver's license. On November 19, 2011, the appellant applied for an identification card at a DMV office in Richmond. On December 29, 2011, January 3, 2012, and February 2, 2012, the appellant applied for a Virginia driver's license.[3] On each of these applications, the appellant stated that his name was "Ray Alexander Hughes" or "Ray A. Hughes" and that his date of birth was October 6, 1965. While the appellant provided a social security number on three of the four applications, the social security number that he provided did not match the social security number associated with the appellant's previous driver's license issued in the name of "Alexander Ray Thompson."

The appellant did not complete certain portions of the applications. Although the applications contained a box stating "If your name has changed, print your former name here," the appellant left this box blank on each of the applications. The appellant also failed to acknowledge that he previously held a Virginia driver's license on the November 19, 2011, December 29, 2011, and January 3, 2012 applications. On the February 2, 2012 application, however, the appellant indicated that he previously held "a driver's license or learner's permit from Virginia, another state, a U.S. territory or a foreign country" that had been "[l]ost."

---

[3] The DMV denied the December 29, 2011 and the January 3, 2012 applications because the appellant failed or did not complete certain driving exams.

Despite the omissions in the applications, the appellant signed each application and certified under the penalty of perjury that the information he provided in the application was "true and correct."

On July 8, 2016, law enforcement officials received a tip regarding the appellant. A preliminary investigation based on the tip confirmed that the appellant had DMV profiles in two different names: "Ray Alexander Hughes" and "Alexander Ray Thompson." When law enforcement and DMV officials interviewed the appellant on September 19, 2016, the appellant explained that he changed his name to "Ray Alexander Hughes" in Panama in 2011 and that he no longer used the name "Alexander Ray Thompson." The appellant also admitted that he completed several DMV applications using the name "Ray Alexander Hughes" without indicating that he previously changed his name.

The appellant was charged with four counts of forgery of a public record based on the DMV applications that he completed between November 19, 2011, and February 2, 2012. At his trial, the appellant testified that he completed the DMV applications using the name "Ray Alexander Hughes" because he believed that was his legal name. The appellant testified about the steps that he had taken to change his name in Panama and explained the circumstances surrounding the name change. He also testified that he obtained a United States passport in the name of "Ray Alexander Hughes." The appellant admitted, however, that he did not list his former name on any of the DMV applications at issue.

The appellant attempted to admit a translation of the April 29, 2011 Panamanian court order into evidence at his trial. The Commonwealth objected to the admission of the document, arguing that it constituted inadmissible hearsay and that it had not been properly authenticated. In response to the Commonwealth's objections, the appellant maintained that the order was not offered "for the truth of matter but to show . . . the impression on [the appellant] or his . . . good

faith belief of what was occurring, in terms of his name change." The appellant also argued that the order was admissible as a "public record." After the appellant testified about the source of the document, he again moved to admit it into evidence "not . . . for the truth of the matter, but going to his intent to commit fraud." The circuit court then admitted the translation of the April 29, 2011 order into evidence. The circuit court also admitted copies of the appellant's reissued birth certificate and his passport into evidence during the trial.

The appellant moved to strike the evidence against him at the conclusion of the Commonwealth's case-in-chief, and he renewed his motion to strike after he testified in his own behalf. Citing Henry v. Commonwealth, 63 Va. App. 30 (2014), the appellant maintained that the evidence did not prove that he committed an actual forgery. While the appellant admitted that he failed to provide certain information in the DMV applications, he argued that he completed the applications using his legal name, "Ray Alexander Hughes." Therefore, the appellant contended that he did not create forged or unauthentic documents.

The Commonwealth maintained that the appellant committed forgery when he completed the DMV applications. Although the Commonwealth acknowledged that the appellant attempted to change his name in Panama, the Commonwealth emphasized that the appellant did not take any steps to legally change his name in Virginia. Consequently, the Commonwealth argued that the appellant's name change was ineffective. As the appellant's name was still legally "Alexander Ray Thompson," the Commonwealth contended that the appellant created unauthentic documents when he completed the DMV applications using the name "Ray Alexander Hughes."

After considering the parties' arguments, the circuit court determined that the appellant committed forgery when he completed the four DMV applications at issue. The circuit court concluded that the appellant had not effectively changed his name to "Ray Alexander Hughes"

and that he created unauthentic public records when he completed the DMV applications using that name. The circuit court convicted the appellant of the charged forgery offenses, and this appeal followed.

## II. ANALYSIS

The appellant contends that the evidence presented at his trial failed to prove that he forged the public records at issue. When considering the sufficiency of the evidence on appeal, we "'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" White v. Commonwealth, 68 Va. App. 111, 118 (2017) (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257 (2003) (*en banc*)); see also Code § 8.01-680. "[U]nder this familiar standard of review, '[a]n appellate court does not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Dalton v. Commonwealth, 64 Va. App. 512, 525 (2015) (quoting Williams v. Commonwealth, 278 Va. 190, 193 (2009)). "Rather, the relevant question is whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quoting Williams, 278 Va. at 193). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" Chavez v. Commonwealth, 69 Va. App. 149, 161 (2018) (quoting Banks v. Commonwealth, 67 Va. App. 273, 288 (2017)).

The appellant acknowledges that he failed to disclose certain information about his prior identity when he completed the DMV applications at issue. While the appellant may have failed to disclose the information for a fraudulent purpose (i.e., to avoid being required to register as a sex offender), the appellant argues that any information that he omitted from the applications did

not affect their genuineness or authenticity. Thus, the appellant contends that the omission of the information regarding his prior identity did not constitute forgery.

The appellant also argues that he did not complete the DMV applications using a false or fictitious name. The appellant maintains that he legally changed his name to "Ray Alexander Hughes" in Panama, and he emphasizes that the United States government recognized that "Ray Alexander Hughes" was his name when it issued his passport. As the appellant contends that he legally changed his name to "Ray Alexander Hughes," the appellant argues that he did not create unauthentic documents when he completed the DMV applications using that name.

## A. THE APPELLANT DID NOT COMMIT FORGERY WHEN HE FAILED TO DISCLOSE INFORMATION REGARDING HIS PRIOR IDENTITY

Code § 18.2-168, the statute prohibiting the forgery of public records, states,

> If any person forge a public record, or certificate, return, or attestation, of any public officer or public employee, in relation to any matter wherein such certificate, return, or attestation may be received as legal proof, or utter, or attempt to employ as true, such forged record, certificate, return, or attestation, knowing the same to be forged, he shall be guilty of a Class 4 felony.

Although Code § 18.2-168 prohibits the forgery of public records, it does not provide a definition of the term "forgery." In general, forgery has been defined as "the false making or materially altering with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability." Henry, 63 Va. App. at 38 (quoting Rodriquez v. Commonwealth, 50 Va. App. 667, 671 (2007)).

"[I]n criminal cases the great weight of authority holds false statements in . . . otherwise valid instruments not to be forgery within its common law or unexplained meaning." Id. at 39 (quoting United States v. Jones, 553 F.2d 351, 355 (4th Cir. 1977)). "[W]here the 'falsity lies in the representation of facts, not in the genuineness of execution,' it is not forgery." Id. at 38 (quoting Gilbert v. United States, 370 U.S. 650, 658 (1962)).

> Falsifying the genuineness of a document is so critical to the offense of forgery that when a person writes a letter or completes a loan application or other instrument and signs it with his own name, he is not guilty of forgery because a false statement is contained therein, even if he knew it was false and acted with intent to defraud.

Id. at 39 (quoting Vizcarra-Ayala v. Mukasey, 514 F.3d 870, 875 (9th Cir. 2008)).

This Court addressed a forgery case involving a simple misrepresentation of fact in Henry. In that case, Henry made false statements regarding his real estate assets in two financial statements when he applied for indigent defense services. Id. at 35-36. Despite these misrepresentations, Henry signed his legal name, "William Lloyd Henry," on the financial statements and certified that the information he provided was "correct to the best of [his] knowledge." Id. Henry was convicted of two counts of forgery of a public record based on the inaccurate financial statements, and he appealed his convictions to this Court. Id. at 34.

This Court reversed Henry's forgery convictions, concluding that the financial statements at issue were not forgeries merely because they contained misrepresentations of fact. See id. at 41-42. This Court noted that "in order for Henry's forgery conviction[s] to be upheld, the Commonwealth was required to prove that Henry's conduct with respect to the financial statements altered the genuineness and authenticity of those documents, making them *not in fact what they purported to be.*" Id. at 40. This Court then explained,

> The documents purported to be financial statements for William Lloyd Henry and remained financial statements for William Lloyd Henry despite Henry's alleged misrepresentations about his real estate assets. Although the financial statements ultimately contained "a lie" (because the full extent of Henry's real estate assets was omitted), the material character of the documents themselves was not forged or altered; they remained authentic— the lie was not "about the document itself."

Id. at 41-42 (quoting 3 Wayne R. LaFave, Substantive Criminal Law § 19.7(j)(5) (2d ed. 2003)).

Henry illustrates that a misrepresentation or false statement must affect the genuineness or authenticity of a document in order for the document to constitute a forgery. A mere misrepresentation of fact in a document may not support a forgery conviction when the alleged forger signs his or her legal name to the document, see id. at 41-42, even when the misrepresentation itself was made with fraudulent intent. See id. at 39. In the present case, the appellant misrepresented facts in the DMV applications at issue when he failed to indicate that he previously changed his name and held a Virginia driver's license. Although the appellant may have made these misrepresentations with a fraudulent intent, these misrepresentations, standing alone, were insufficient to support his forgery convictions. See id. at 41-42.

B.  THE APPELLANT DID NOT COMPLETE THE DMV APPLICATIONS
     USING A FALSE OR FICTITIOUS NAME

Though a mere misrepresentation of fact in a public record may not support a forgery conviction, the creation of a document using a false name constitutes forgery. See Rodriquez, 50 Va. App. at 671-72. "[W]hile a person may adopt any name he may choose so long as it was done for an honest purpose, under the broad definition of forgery the crime is committed by signing an assumed name, or a fictitious name, for a dishonest purpose and with intent to defraud." Moore v. Commonwealth, 207 Va. 838, 841 (1967). "Signing one's own name with the intent that the writing be received as written by another person, or impersonating another in the signature of an instrument, or signing in such a way as to make the writing purport to be that of another, are all acts of forgery." Rodriquez, 50 Va. App. at 672 (quoting United States v. Price, 655 F.2d 958, 960 (9th Cir. 1981)).

In Rodriquez, this Court addressed a forgery case where a defendant used the name of another individual to create public records. Rodriquez provided his brother's name and identifying information to a police officer who was issuing traffic summonses to him. Id. at 670. In turn, the police officer issued the summonses in the name of Rodiquez's brother rather than in

the name of Rodriquez.  Id.  Rodriquez, however, illegibly signed his own name on the summonses rather than his brother's name.  Id.  Rodriquez was eventually convicted of two counts of forging a public record based on his actions.  Id. at 669.

This Court affirmed Rodriquez's convictions, concluding that he forged the summonses "by providing false information to the [police] officer as he prepared the documents."  Id. at 671-72.  This Court noted that Rodriquez "provided false and fraudulent information in order to create summonses that were *entirely* fraudulent and not authentic."  Id. at 672 n.2 (emphasis added).  Thus, "[t]he summonses themselves were 'lies.'"  Id.  When addressing Rodriquez in Henry, this Court aptly explained that the false information provided by Rodriquez transformed the summonses at issue "into something other than what they purported to be—the documents purported to be summonses for Rodriquez but were forged to be summonses for Rodriquez's brother."  Henry, 63 Va. App. at 40.

Pursuant to Rodriquez, the appellant in the present case committed forgery if he completed the DMV applications at issue using a false or fictitious name.  The creation of a document using a false name affects the genuineness of the document by altering what the document "purports to be," and therefore, constitutes forgery.  See Rodriquez, 50 Va. App. at 671-72.  The appellant would have created documents that purported to be something other than what they actually were if he completed the DMV applications using the name "Ray Alexander Hughes" when they were truly DMV applications for "Alexander Ray Thompson."

While the evidence presented in this case established that the appellant had DMV profiles as both "Ray Alexander Hughes" and "Alexander Ray Thompson," it failed to establish that "Alexander Ray Thompson" was the appellant's name when he completed the DMV applications at issue.  Although the appellant admitted that he did not change his name in Virginia pursuant to

Code § 8.01-217, he testified that he changed his name to "Ray Alexander Hughes" in Panama in 2011. The appellant also presented substantial documentary evidence supporting this claim.

The appellant's United States passport indicated that his name was "Ray Alexander Hughes." In general, a passport is "[a] formal document certifying a person's identity and citizenship so that the person may travel to and from a foreign country." Passport, Black's Law Dictionary (10th ed. 2014). "A passport is the universally accepted evidence of a person's identity and nationality." Id. (quoting Burdick H. Brittin, International Law for Seagoing Officers 183 (4th ed. 1981)). "As a travel control document, a passport is both proof of identity and proof of allegiance to the United States." Haig v. Agee, 453 U.S. 280, 293 (1981); see also United States v. Laub, 385 U.S. 475, 481 (1967) ("A passport is a document identifying a citizen.").

The United States government defines a passport as "any travel document issued by competent authority showing the bearer's origin, identity, and nationality if any, which is valid for the admission of the bearer into a foreign country." 8 U.S.C. § 1101(30). Similarly, federal regulations define a passport as "a travel document regardless of format issued under the authority of the Secretary of State attesting to the identity and nationality of the bearer." 22 C.F.R. § 51.1. Under the Virginia Notary Act, passports are accepted as "satisfactory evidence of identity." Code § 47.1-2.

Although the Commonwealth maintained that the appellant's attempt to change his name was ineffective, the appellant's passport certified that his name was "Ray Alexander Hughes." While the Commonwealth suggested that the appellant may have withheld certain information when he obtained his passport, the Commonwealth did not present any evidence to establish that the appellant's passport was invalid. Therefore, the appellant did not commit forgery when he completed the DMV applications at issue.

III.  CONCLUSION

In summary, we conclude that the evidence failed to support the appellant's forgery convictions.  The misrepresentations regarding the appellant's previous identity did not affect the genuineness or authenticity of the DMV applications, and the evidence failed to prove that the appellant completed the DMV applications using a false or fictitious name.  Accordingly, we reverse and dismiss the appellant's convictions.

<u>Reversed and dismissed.</u>