UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judge O'Brien and Senior Judge Humphreys

WILLIE FRYE, JR.

MEMORANDUM OPINION*

v.        Record No. 0169-24-2                          PER CURIAM
                                                        MAY 20, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF GREENE COUNTY
David M. Barredo, Judge

(Thomas M. Wilson, on brief), for appellant.

(Jason S. Miyares, Attorney General; Ryan Beehler, Assistant
Attorney General, on brief), for appellee.


After a jury convicted Willie Frye, Jr., of felony hit and run in violation of Code

§ 46.2-894, the trial court denied his motion to set aside the verdict.  On appeal, Frye contends

that the evidence was insufficient to prove the offense.  After examining the briefs and record, the

panel unanimously holds that oral argument is unnecessary because "the appeal is wholly without

merit."  Code § 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND

Applying a familiar principle of appellate review, we state the facts "in the light most

favorable to the Commonwealth, the prevailing party at trial."  *Poole v. Commonwealth*, 73

Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).  "In

doing so, the Court 'discard[s] all evidence of the accused that conflicts with that of the

Commonwealth and regard[s] as true all credible evidence favorable to the Commonwealth and all

fair inferences reasonably deducible' from that evidence."  *Parham v. Commonwealth*, 64 Va. App.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

560, 565 (2015) (alterations in original) (quoting *Henry v. Commonwealth*, 63 Va. App. 30, 37 (2014)).

During rush hour on September 23, 2022, Robert Lee Issacson, Jr. was driving a tractor-trailer on Route 29, approaching the intersection of Route 29 and Route 33. At this location, Route 29 consists of two southbound lanes for vehicles traveling straight through the intersection, and one lane for vehicles turning onto Route 33. The intersection is controlled by a traffic light. Isaacson's tractor-trailer was in the right through lane, slowing down for a red light, and six or seven vehicles were in the left lane, stopped at the light.

As Issacson approached the intersection, he heard a vehicle accelerating to his left. He saw Frye's pickup truck approach the intersection, "not slowing down at all." It appeared to Isaacson that "at the last second," Frye saw the line of vehicles ahead of him and was trying to avoid hitting the vehicle directly in front of him by driving between it and Issacson's tractor-trailer. Issacson, who was traveling less than 45 miles per hour, "veered to the right" to stop his tractor-trailer and "to get out of the way." Frye's pickup truck "went across the back of" the last car in the adjacent lane, and "continued up" in Issacson's travel lane, causing Issacson to "really hit [his] brakes to stop." As the pickup truck struck the car, the truck's left front tire came off, bounced twice, and hit another car two vehicles ahead of the car that was struck. Afterwards, Frye "continued on," while Issacson focused his attention on the vehicles behind him out of concern that he was going to be struck. When Issacson was satisfied that he was out of danger, he stopped and got out of his tractor. Frye's pickup truck was gone, and Isaacson did not see it again.

Shyanne Randolph was the sole occupant of the car that Frye struck with his truck. She had stopped at the light behind other vehicles and been there for at least two or three minutes when she suddenly felt a "sharp pain" and "[e]verything went black . . . ." When Randolph regained consciousness, she found herself in a "little ditch area." A few minutes later, she realized that she

had been involved in an accident. Because she "blacked out," Randolph didn't see anything after the collision.

But Robin Birch, another driver on the road, saw Frye's truck as it left the accident scene. Before the accident, her vehicle was at "a complete stop" in a southbound lane of Route 29, due to the red traffic light at the Route 33 intersection. As she looked in her mirror to see how much traffic was backed up behind her, she saw "[Frye's] truck coming." She "got a little bit to the left," and the truck hit the car behind her and then "kind of sideswiped [her] a little bit." Afterwards, although "a little shook up," Birch saw that Frye "kept going." He first pulled into a church parking lot at the intersection and then, without stopping, turned right onto Route 33, traveling towards the entrance to Walmart. Birch also pulled into the church parking lot to get out of the road, but she did not see the truck after it turned right onto Route 33.

After the collision, during which he lost his front left tire, Frye drove through the church parking lot, turned right onto the intersecting street, and turned right again onto a side street. At that point, Frye turned left onto a business access road where he ultimately came to a stop.

Detective Evans Oakerson, who was off duty at the time, saw Frye's truck on the road leading to Walmart. The truck was headed towards the detective, and he estimated that it was traveling about 15 to 20 miles per hour. The left front tire was missing from the vehicle and, as a result, its left front suspension was dragging the ground.

Assuming that Frye's truck had been involved in an accident, Detective Oakerson called 911, turned around in the middle of the road, and headed back in Frye's direction. After briefly losing sight of Frye's truck, Detective Oakerson came to a four-way-stop intersection at an access road for both Lowe's and Walmart. When he looked to his left, the detective saw Frye's pickup truck. This time, the truck was stopped "about halfway down that road or so,"

somewhere between 50 and 75 yards from the intersection. Frye was standing outside the truck, talking on a telephone. Detective Oakerson approached Frye and obtained his driver's license.

Frye was charged with the felony offense of leaving the scene of an accident, causing personal injury to another, based on Randolph's injury. He also was charged with the misdemeanor offense of leaving the scene of an accident, causing damage to attended property, based on the damage to Birch's vehicle.

At trial, Issacson, Randolph, Birch, and Detective Oakerson testified for the Commonwealth. At the conclusion of the Commonwealth's case, Frye moved to strike the evidence as insufficient to prove the charges. The court denied the motion.

Thereafter, Dwayne Simms, a garage owner, testified as a defense expert in the field of vehicle braking systems. After inspecting the post-accident condition of Frye's truck, Simms concluded that when Frye's left front tire was "ripped out," the brake caliper was "ripped off" as well, resulting in a complete loss of brake pressure. Simms testified that this complete loss of brake pressure in Frye's truck meant that "[t]here was no way you would be able to stop it." During cross-examination, Simms acknowledged that "[t]he emergency brake would stop it if you [thought] about it at that moment." On redirect, when Simms was asked if the emergency brake would stop the vehicle if it were traveling more than 20 miles per hour, he said, "It would slow it down, but, you know, they're not meant to completely stop a vehicle."

After Simms's testimony, Frye rested his case and renewed his motion to strike. The court denied the motion because the issue of whether Frye could have stopped his truck by using the emergency brake was "for the jury to decide." The jury returned guilty verdicts on both charges, and the court convicted Frye of the offenses.

Frye subsequently moved to set aside the verdict, claiming: (1) the evidence was insufficient to prove that he failed to "immediately stop as close to the scene of the accident as possible without

- 4 -

obstructing traffic," as required by Code § 46.2-894, and (2) the evidence was insufficient to support two hit-and-run convictions because it established that a single, "concurrent accident" occurred although his truck caused impacts to two other vehicles. The court agreed in part and set aside the jury verdict on the misdemeanor charge but denied the motion to set aside the verdict on the felony charge. Frye appeals.

ANALYSIS

Code § 46.2-894 provides in relevant part: "[t]he driver of any vehicle involved in an accident in which a person is killed or injured . . . shall immediately stop as close to the scene of the accident as possible without obstructing traffic, as provided in [Code] § 46.2-888." On appeal, Frye does not challenge that he was the driver of the vehicle, or that his vehicle was involved in an accident. Rather, he contends that the jury did not have sufficient evidence to find that he failed to "immediately stop [his vehicle] as close to the scene of the accident as possible without obstructing traffic." Code § 46.2-894.

When faced with a challenge to the sufficiency of the evidence, we first ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Kelley v. Commonwealth*, 69 Va. App. 617, 624 (2019) (quoting *Maxwell v. Commonwealth*, 275 Va. 437, 442 (2008)). "If there is evidence to support the conviction, an appellate court is not permitted to substitute its own judgment for that of the finder of fact, even if the appellate court might have reached a different conclusion." *Conrad v. Commonwealth*, 31 Va. App. 113, 123 (1999) (en banc) (quoting *Commonwealth v. Presley*, 256 Va. 465, 466 (1998)). Thus, when a jury returns a guilty verdict, "we review the jury's decision to see if reasonable jurors could have made the choices that the jury did make," and "[w]e let the decision stand unless we conclude no rational juror could have reached that decision." *Pease v. Commonwealth*, 39 Va. App. 342, 355 (2002) (en banc).

"[D]etermining the credibility of witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify." *Maldonado v. Commonwealth*, 70 Va. App. 554, 562 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). An expert witness's testimony "should be given the same consideration as is given that of any other witness, considering his opportunity for knowledge of the subject and subject matter as to which he testifies, his appearance, conduct, and demeanor on the stand." *McLane v. Commonwealth*, 202 Va. 197, 206 (1960). Further, a jury is entitled to accept or reject *any* testimony, regardless of whether it is uncontradicted. *See id.* at 205-06 (holding that "jurors were not required to accept the testimony of [a witness] as conclusive merely because he qualified as a medical expert").

Frye contends that he stopped his pickup truck as close to the scene as possible. Relying on Simms's testimony regarding his truck's loss of braking ability, Issacson's estimate of his pre-accident speed, and Detective Oakerson's estimate of his post-crash speed minutes later, Frye contends that "[n]o rational trier of fact could have found the evidence was sufficient to prove that [he] failed to stop immediately as close to the scene of the accident as possible without obstructing traffic."

In both bench and jury trials, appellate courts "review factfinding with the highest degree of appellate deference." *Bowman v. Commonwealth*, 290 Va. 492, 496 (2015). Viewing the totality of the evidence in the light most favorable to the Commonwealth, we conclude that a jury could find that Frye violated Code § 46.2-894 by failing to stop his vehicle more quickly and closer to the scene of the accident. Frye bases his entire argument on the premise that his truck did not lose much speed after colliding with Randolph's car and, therefore, he needed the time and distance that he took to stop his vehicle without obstructing traffic. The jury, however, was not required to accept this premise. To the contrary, it was permitted to find that even with the

loss of his front brakes, Frye attempted to place as much time and distance as possible between his truck and the crash scene. Given the circuitous route that Frye's truck travelled before finally stopping, the jury was entitled to infer that Frye steered his truck in an effort to avoid apprehension by the police—not to avoid obstruction of traffic. As the court observed, the testimonial evidence established that Frye drove through a church parking lot at the intersection of Route 29 and Route 33 and later drove past two different parking lots. Because Frye apparently had no difficulty steering his truck, the jury was entitled to conclude that Frye could have used one of the parking lots to coast around until his truck slowly came to a stop.

Finally, Simms's testimony provided the jury with an additional basis for finding that Frye did not stop as soon as possible and as close to the accident scene as possible. Although Simms initially testified that Frye lacked the ability to stop his truck due to a complete loss of braking ability resulting from the collision and loss of the front tire, he conceded that Frye could have stopped his truck by using the emergency brake if his speed had been less than 20 miles per hour and he had thought about it "at that moment." When Deputy Oakerson first encountered Frye's truck coming from Route 33, heading towards him on the road leading to Walmart, the deputy estimated that Frye was traveling 15 to 20 miles per hour. Thus, Frye could have used the truck's emergency brake to stop his truck. Yet, Frye continued to drive down the road, turned left onto the access road to Walmart, and travelled 50 to 75 yards before coming to a stop. Given this driving conduct, the jury was entitled to infer that Frye deliberately did not stop sooner because he did not want to do so.

We hold, therefore, that the court did not err in denying Frye's motion to set aside the verdict. Whether Frye breached his statutory duty to "immediately stop as close to the scene of the accident as possible without obstructing traffic" was an issue to be decided by the jury. Accordingly, we affirm the trial court's ruling.

## CONCLUSION

For these reasons, we affirm the trial court's judgment.

*Affirmed.*